Comstock *v.* Comstock.

time to ask for an adjournment, in order to obtain time to prepare such papers, and there is no reason to suppose that time would not have been granted.

It seems to me, however, that the facts above referred to should have been held sufficient to have allowed a re-hearing of the motion on the merits; but the appeal from that part of the order appealed from having been waived by the appellant, we cannot sustain the appeal for that cause.

The order appealed from should be affirmed, but without costs.

[FIRST DEPARTMENT, GENERAL TERM, September 5, 1870. *Ingraham*, P. J., and *Cardozo*, Justice.]

———•••———

LEVI COMSTOCK and MARY COMSTOCK, appellants, *vs.* GEORGE W. COMSTOCK, executor &c., respondent.

It is a well settled rule of equity jurisprudence that all gifts, contracts or ben-efits from a principal to one occupying a fiduciary or confidential relation to him are constructively fraudulent and void.

The court, in such cases, acts upon the principle that if confidence is reposed it must be faithfully acted upon; if influence is acquired it must be kept free from the taint of selfish interest, and conniving and overreaching bargains.

It is for the common security of all mankind that gifts procured by agents, and purchases made by them, from their principals, should be scrutinized with a close and vigilant suspicion. So of notes, bills, contracts, releases and obligations.

Agents are not permitted to deal with their principals, in any case, except upon showing the most entire good faith, a full disclosure of all the facts and circumstances attending the transaction, and an absence of all undue influence or imposition.

Transactions which would be held unobjectionable between other parties are often declared void, if between persons occupying confidential relations. *Per* JAMES, J.

Where the relation of principal and agent existed between the parties to a note, receipt and contract, strengthened by the further and other relation of parent and child; and the parent, who was alleged to have executed the

Comstock *v.* Comstock.

papers, was old and feeble, being at least seventy-seven years of age when the first bore date, and living with her son, the other party to instruments, which were in his handwriting, and for his benefit; no object, benefit or advantage to her appearing ; and there were other suspicious circumstances ; and the party claiming under the instruments, merely proved the signature of the other party thereto, without offering any evidence of the facts and circumstances under which they were made; of their consideration, object and purpose; of their freedom from undue influence or imposition; or of good faith ; *Held* that without assuming the existence of actual fraud, the claimant occupying a confidential relation to the other party, as her agent, at the time the instruments purported to be executed, they were, because of that relation presumptively, fraudulent and void, as to her, or her representatives; which presumption could only be overcome by actual proof.

APPEAL from a decree of the surrogate of Saratoga county, on a final accounting by the respondent as executor of Abi Comstock, deceased.

The testatrix became a widow in 1846, and from that time until her death in 1860, resided with the respondent, her son, and who acted as her agent in the collection of rents and other moneys. The testatrix, at the time of her death, was over eighty years old.

In his account the respondent omitted to credit the estate with money received by him, as agent for the testatrix, previous to September 14, 1858 ; and he charged the estate with a balance for board of said testatrix from 1846 to her death, and with a note for $1000, dated May 1, 1857, purporting to be signed by her and payable to said executor.

To sustain his claim, and his omission to give credit, the executor produced and proved the signature of the testatrix to the following papers: 1st. A receipt, dated September 4, 1858, for twenty dollars, "in full for rent and all other demands, of whatever name or nature, due from said George." 2d. An agreement, dated December 9, 1857, "to pay said George $150 per year, for her board, from November 4, 1846, to November 4, 1857, as long as she should live." 3d. A note, dated May 1, 1857, payable three months after date, for $1000, with interest.

Comstock *v.* Comstock.

Evidence was given tending to show that said Abi, during most of the period she lived with her son, did his housework. Other evidence was given tending to show that during the latter part of her life she was quite feeble and incapable of earning her board.

The surrogate held the account sufficient, and allowed to the executor the amount due on said note, and the balance claimed for board. To this ruling the contestants duly excepted.

*Wm. Hay* and *J. R. Putnam,* for the respondent.

I. In regard to the claim made against the respondent for rents collected by him of the testatrix, during her lifetime, there was no proof offered by the appellants on this point, except the bare fact that the respondent collected the rents. There is no proof of any claim being asserted against the respondent by the testatrix during her lifetime. No proof that she made any charge. No proof, direct or indirect, that the money so collected by the agent was not paid over to the principal. We produced on the trial a receipt, dated September 14, 1858, proved to have been executed by the testatrix, which acknowledges the payment of rent, in full, up to that time. At the time of the execution thereof, she was of sound mind and competent to contract. Hence we claim : 1. That the decree of the surrogate, holding that this receipt cut off all claim for previous rent, is right, and should be sustained. (*a.*) This receipt is properly proven to have been executed by the testatrix. We were not bound to prove the circumstances under which it was given. The presumption is that the agent did his duty by paying over the money to his principal, as evidenced by the receipt. There is no evidence in the case contradicting this paper. (*b.*) If the court were to presume, as might be done, from the latter clause of the receipt, that this money, for which receipt was given, went to pay debts of William P. Comstock, de-

ceased, and for which debts the building, from which the rents were so received, was liable to be sold, then we submit it was reasonable and right for her to pay those debts and save the property from a sale. It was her interest and duty to make such payment. It was what any good business person would have done under the circumstances. (*c.*) If, however, it was a gift of the money collected by the testatrix to her son, it was valid, and the finding of the surrogate should be sustained. (*Van Deusen* v. *Rowley*, 4 *Seld.* 358.) There is nothing unreasonable or improbable in the supposition that the testatrix should have freely and voluntarily given this money to the respondent. He was her youngest son alive, with whom she had lived for many years. By her will, made in 1857, it appears she did not intend to leave any property to the contestants. The only other person, besides the respondent, mentioned, or provided for, in her will, Daniel Comstock, was dead. George W. Comstock was the only person alive to whom we may suppose she would leave the property. Hence, that she should give it to him, (if it were the fact,) would not be unreasonable or improbable. There is no proof offered to show that this paper was obtained by what is termed "undue influence," on the part of the respondent. No proof that the respondent obtained any advantage by it. It was a mere acknowledgment of a payment. But the claim that may be asserted by the appellants, that it was so obtained, will be considered hereafter. 2. We submit the surrogate erred in refusing to allow the respondent to show the amount of debts of William P. Comstock paid by him. The proof offered, if made with the authority contained in exhibit C, to pay these debts, would have relieved the respondent from any liability for rents, unless the amount received therefrom exceeded the amount of such debts. Paper C, although inartificially drawn, contains an authority from a principal to her agent to pay the debts of William P. Comstock—of course, out of her

moneys.    This authority was proved.    It is difficult to see on what principle, proof of the amount of debts paid in pursuance thereof, was excluded.    If we had been allowed to make this proof, it would have been an answer to any claim against the respondent for rents.    By the allowance, however, of the claim of the respondent against the testatrix, the error of the surrogate became immaterial, inasmuch as the claim overbalances all property left by the deceased.

II.  We submit the finding of the surrogate is correct in allowing the respondent's claim for board of the testatrix, pursuant to contract A and B.    These papers form but one contract, the note A being indorsed on B.    The note A, dated May 1, 1857, seems to have been given on account of board.    Afterwards, November 4, 1857, they seem to have made a full settlement for the support of the deceased, from the time she came to live with George, and a contract for her future board until her decease, in paper B.    We clearly prove the execution of these papers by proving the handwriting of the deceased.    There is no claim that at that time the testatrix was not of sound mind, and capable of making a contract.    Hence, this contract is valid and should be sustained, unless the position taken by the appellants—that although the testatrix was of sound mind, yet she was old and feeble in mind and body ; that the respondent was her son, with whom she lived, her agent and adviser; that papers A, B and C, were obtained by undue influence; that they show not the will or contract of Abi Comstock, but of George W. Comstock—be correct. The principle which is sought to be made applicable to this case is well stated in *Hill on Trustees,* 156 to 162. " Wherever, from the peculiar relations or connection existing between the parties, considerable authority or influence necessarily exists on the one side, and a corresponding reliance and confidence is placed on the other, a party will not be suffered to abuse this authority or influence by

extracting from it any advantage to himself. But the court will look into transactions between those relative situations with extreme jealousy, and if it find the slightest trace of undue influence used, or unfair advantage taken, will interfere and give relief. Indeed, in some of these cases, as for instance, in dealings between guardian and ward, trustee and *cestui que trust*, and attorney and client, the transaction is, in itself, considered so suspicious, owing to the near connection between the parties, as to throw the proof on the person who seems to support it, to show that he has taken no advantage of his influence or knowledge, but has put the other party on his guard; bringing everything to his knowledge which he himself knew." (*And see Willard's Eq. Juris.* 170, 176; *Sears* v. *Shafer,* 1 *Barb.* 408; 2 *Seld.* 268; *Brice* v. *Brice,* 5 *Barb.* 533, 540; *Stewart* v. *Lispenard,* 26 *Wend.* 304; *Whelan* v. *Whelan,* 3 *Cowen,* 537; *Huguenin* v. *Baseley,* 14 *Vesey,* 273; *Gibson* v. *Jeyes,* 6 *id.* 266; *Story's Eq. Juris.* §§ 308–324.) In answer, we submit that the appellants fail to show the contract in question obtained by undue influence, within the principle of above authorities. 1. In regard to paper C. There is an entire failure of proof that it was obtained through any undue influence. It was not a conveyance of any property; but simply an acknowledgment of payment of money. We submit that there is no case or authority, holding that a receipt of a few lines, signed by a person of sound mind and capable of contracting, though executed by an old person to her son and agent, (unless some facts be shown casting suspicion on it,) requires any explanation on the part of the person offering it. He is not dealing in a " matter of advantage." He is simply receiving an acknowledgment for money paid, as evidenced by the paper. 2. In regard to contract B and note A. This contract should be upheld by this court. Because the contract, under the circumstances, was fair and judicious, such as a mother might reasonably

make with her son of her own free will, and without any undue influence; and hence no advantage was taken of the testatrix. ˙ (*a*.) On the trial the appellants, on the ground that the deceased, during some portion of the time she lived with the respondent, did household work, could not understand why it was worth anything to board her; the answer is, the respondent was a single man and kept house for her accommodation, and was entitled to receive pay therefor. The appellants introduced witnesses to show that it was worth nothing to board her, and that her services were of value to the respondent. But they were opposed and overbalanced by the witnesses of the respondent. They fail to show the contract unreasonable or disadvantageous to the testatrix. The reverse is shown; at least the decision of the surrogate on the conflicting evidence to this effect should be final. (*b*.) The contract was reasonable, because it obliged the respondent to support his mother at a specified rate until her death. Had she been been bed-ridden for three years instead of three months, he would have been obliged to support her at the same rate. (*c*.) In May and November, when the paper was made, Abi Comstock was in the receipt of a fair income from said rents, and able to pay a fair price for her board, and, if in making this contract with her son, she did agree to give him a liberal compensation, we submit it reasonable and right that she should do so. At the time of making it she had been living with her son eleven years. During all that time her income, if it had been paid to her, was only about $66. But this income, small as it was, appears not to have been paid after the first year, and thus George during all this time had been supporting the testatrix with scarcely any recompense, and with but small chance of receiving any. If, then, when by the accident of her son's death, the testatrix became possessed of an income, she made a contract with the respondent by which she did secure him even a large compensation, is it to be

wondered at? Is it not what she naturally would and ought to have done; grateful for his past care, support and kindness? Therefore this contract being a fair and reasonable one, made by a person competent to contract, should be sustained. By it the respondent gained no "advantage," and hence it is not within the above authorities. 3. This contract should be sustained because it is the contract of Abi Comstock, made of her own free will. There is absolutely no proof in the case, of the circumstances under which the contract was made. Without going through the evidence, we submit that there is no proof showing, or tending to show, that the respondent· exercised any improper influence over the deceased, in obtaining these papers, or that he exercised or had any general influence over her. The evidence offered, to show this fact, such as it was, was in point of time long after the execution of this contract, and failed to show any such influence. What evidence there is in the case shows that there was no such influence. It appears affirmatively that the testatrix was a stubborn woman, and wanted her own way, and was not under the influence of the respondent. Again; the case shows, what appeared more clearly by the personal appearance of the respondent on the trial, that he was not a person likely to acquire an influence over his mother, or any person. The will of the testatrix—executed about a month after this contract—and to draw which she was brought in the presence of two counselors of this court by the respondent, in which one half of her property was willed to Daniel Comstock, shows not only that the resondent had not any general influence over his mother, but did not seek any. If he had, he could have been sole legatee, and this litigation could have been obviated. In this conection it might be asked why, if this contract be valid, should she make a will, when by such contract all the property left by her was swept away. Answer: She was in the receipt of a large income. Had she lived a few

years more she would have left property to divide. She wished to leave her property to George and Daniel. It would have been unjust to divide equally between the two, and not in the first instance make a liberal compensation to George for his services. .The division, as she made it, was fair and judicious. The evidence of the appellants, if true, shows that the respondent did not seek any undue influence over his mother. All the evidence shows that the testatrix was not of yielding or pliant disposition, but stubborn and peevish. How could a son establish an influence over such a person? evidently by humoring; by yielding in small matters; not by harsh language or treatment; not by crossing her; and yet the evidence of the appellants, if true, shows George using harsh language, quarreling with her on small matters, and entirely fails to show any attempt on his part to acquire or hold any general influence over her. Hence, there being nothing unreasonable in the contract; no general influence of the respondent over the deceased, shown; no suspicious fact or circumstance in regard to the execution of the contract being proved; does the fact, merely that the deceased was old, was the mother of the respondent and lived with him, and that he was her agent, authorize the court to set aside the contract? Must the respondent show affirmatively the absence of undue influence? We submit he need not. It is for appellants to show the affirmative, and not for us to show the negative. See.*Gardner* v. *Gardner*, (22 *Wend.* 540,) approving the doctrine of Sir John Nicoll, who fixes the onus on the party charging undue influence, saying: "He must put his finger on the act, showing how it was wrought." Were it necessary for us to show the absence of undue influence, however, we claim we have shown it, by showing a fair contract and the facts above set out. But it was not necessary for us to show the absence of undue influence. There is a distinction between such a case as this and those arising from transactions

between attorney and client, guardian and ward, and trustee and *cestui que trust.* This distinction is noted in *Hill on Trustees,* (*supra.*) In the later cases, sometimes, the affirmative is on the party claiming under the contract, to show the absence of undue influence. But in a case like this, a party attacking a contract must show a general influence, an unconscientious bargain, fraud or deceit, or some fact or circumstance casting suspicion on the contract, and that the party claiming under the contract has gained an advantage by it. An examination of the leading cases will show this fact. The case of *Whelan* v. *Whelan,* (3 *Cowen,* 537,) was an action to set aside a conveyance made by John Whelan, 74 years of age, to his son William, of a farm worth $9000. There was no consideration, except a bond and mortgage, for the support of the vendor. It was proved that he was credulous and easily led, especially by his son William; that he and his wife had separated, and an action had been commenced against him for her board; that William told him if she went on in this way his whole estate would be dissipated; that if he, John, was going to give him anything, he wished to know it; that as he and his wife were acting, they would soon have little enough for themselves. It appeared that John owed only some trifling debts. The court held (*p.* 577) that William was guilty of actual fraud. In the case of *Sears* v. *Shafer,* (1 *Barb.* 408; 2 *Seld.* 268,) Mrs. Sears executed conveyances of a valuable estate to her brothers, without any consideration, in exclusion of her own children. It was proved that she was of uncommonly mild and amiable disposition, and in case of difficulty very yielding. That at the time she was very ill and depressed in spirits, and was obliged to take laudanum. The paper was prepared by her brother Daniel, with whom she lived on terms of the closest intimacy, and who was her adviser. It was not proved that the paper was read to her, or that she understood it. She could not read or write English. There

was evidence (2 *Seld.* 273) of her declaration to her brother that she had been compelled to sign the conveyance. In the case of *Brice* v. *Brice,* (5 *Barb.* 533,) the action was brought to set aside a conveyance of a farm worth from $6000 to $8000, for an inadequate consideration, made by the plaintiff to his son James Brice. It was proved that James exercised almost unlimited control over the plaintiff, and acted as his agent; that the plaintiff had become feeble, and depended on his son to do his business. The son, to obtain the conveyance of the farm, told him he had become old and foolish, and alluded to the evidence of his imbecility in having signed papers he ought not to have signed, and thus obtained a conveyance of a valuable farm. The case of *Huguenin* v. *Baseley,* (14 *Vesey, Jr.,* 273,) was a case of actual fraud on the part of Basely. Thus, in all these cases, as in all others asserting the principle alluded to, a state of general influence on the one part, and of confidence on the other, is expressly shown; an unconscientious bargain, or other circumstance, showing the contract sought to be set aside one that a reasonable person would not make of his own free will. In this case no such proof is made. On the contrary, we show a reasonable and judicious contract, made but a very short time previous to the date of the will, to which no objection is made. We submit that the mere fact of the age of the testatrix, and that respondent was her son and agent, in the absence of other proof, will not invalidate the contract, (*see Van Deusen* v. *Rowley,* 4 *Seld.* 358;) especially as the contract itself was not in regard to any matter concerning which he was her agent. It may be observed that the writing being prepared or drawn by the party in whose favor it is given, and no instructions being shown to have been given by the party making it, has always been held a circumstance against the validity of such writing. It is not necessary, however, to show instructions, or the reading of the paper. (*Crispell* v. *Dubois,* 4 *Barb.* 393.) This rule, however, can

hardly apply to a note or receipt of a few lines, executed by a person in good health, who can read and write; and to understand or draw which paper no legal knowledge was required.

III. It is submitted that the decision of the surrogate, on the questions of fact involved in this case, in favor of the will, as claimed by the respondent above, is final and cannot be disturbed.

IV. The surrogate did not err in rulings, on the trial, against the appellants. The exception taken to the admission of the testimony of the respondent as to the circumstances attending the execution of the agreement, was properly overruled. This evidence was not of a transaction had personally between the witness and the deceased, within the meaning of the Code; but a party had always been competent to make this preliminary proof, prior to the Code, and this rule has not been altered by the Code. (2 *Cowen & Hill's Notes,* 386, *note* 214, 3*d ed.*) "Parties and persons interested are always competent to prove the loss of a written instrument, or that it is in the power of the other party, and notice to him to produce it, or other circumstance necessary to authorize the introduction of secondary evidence of its contents, and to prove the death of a subscribing witness, or other fact, in order to the admission of proof his handwriting. Such preliminary evidence is addressed to the court upon collateral points, and is not the subject upon which the jury are to pass." (1 *Cowen & Hill's Notes,* 50, *note* 35, *citing* 16 *John.* 193; 20 *id.* 144; 1 *Wend.* 119; 5 *Cowen,* 512; 6 *Wend.* 173.)

*A. Pond,* for the appellants.

Upon the hearing before the surrogate, the defendant produced the $1000 note, the contract for board, the receipt in full, and the power of attorney; and proved the handwriting of the signatures thereto to be those of the testatrix, and without other proof, they were received in

evidence. It was both conceded and proved that the defendant's testatrix was the mother of the defendant; that at the time she signed these papers, if she signed them at all, she was 77 years old, and the defendant was, also, at the time the papers were executed, the agent of the testatrix. There was no evidence given on the part of the plaintiff, or otherwise, to show that the papers above mentioned were read over to the testatrix, or that she knew their contents, or understood their character or legal effect, before or at the time of their execution ; nor was there any evidence to show that they were given upon any, and if any, upon what consideration. The plaintiffs claimed and insisted that under the circumstances, and considering the relations existing between the defendant and his mother at the time, and her great age, the defendant was called upon to give other and additional explanatory evidence, besides that of the execution thereof, in order to establish the validity of the papers so offered and received in evidence. But the surrogate decided otherwise, and allowed the defendant the $1000 note, and gave full effect to the receipt in full dated 14th September, 1858, and held all said papers legal and operative, without any additional or other explanatory evidence besides the mere proof of their execution. And the result is, that in consequence of so holding, the surrogate has disallowed a claim for a large amount of rents collected by the defendant, belonging to his mother, and found the estate indebted in a large sum to the defendant, over and above all the assets belonging thereto, and leaving nothing to the other legatee named in the will, or the plaintiffs, who are his heirs. The main questions in the case, therefore, arise out of the receipt of these papers in evidence, and the effect so given to them by the surrogate. If these papers are presumptively void and of no legal effect without other and additional evidence, it substantially disposes of the entire case, leaving

only some subordinate questions to be determined, of easy
solution. The proof is entirely insufficient to establish
either of the papers above mentioned as a valid instru-
ment against the estate, and in favor of the defendant, and
they are all presumptively void.

I. The relations that existed between the defendant and
the testatrix were such that under the circumstances dis-
closed by the evidence, without proof outside of the papers
themselves, and in addition to evidence of their execution,
it is not competent or legal to establish either of them as
a valid instrument in favor of the defendant, and against
his mother's estate. 1st. As to the $1000 note, dated May
1st, 1857, which is the first in date of these papers, the
evidence is almost conclusive to show it without consider-
ation. (*a*.) It appears quite clear that prior to, and at the
date of this note, the defendant was in fact indebted to
his mother in a large amount, for rents collected by him
as her agent; and for services in boarding him or keeping
his house. The evidence shows that the father of the de-
fendant died in 1846, and that from that time until 1858,
when the defendant got married, his mother kept house
for him or he boarded with her. Now although the de-
fendant has got some fastidious or interested witnesses to
testify that his mother's services were valueless, because
she was not, in her extreme old age, a neat and tidy house-
keeper, yet all such evidence must be regarded as mis-
taken, if not false. She did in fact keep his house for
him, or he boarded with her, and the defendant cannot
now be allowed to say, either that her services, in thus
keeping his house, or the board furnished him, was value-
less. He was indebted to his mother, therefore, at the
time of the date of this $1000 note, either for his board
for the twelve years preceding the date of the note in
question, and succeeding the death of his father, which
occurred in 1846, or for her services in keeping house for
him during that entire period. (*b*.) But he was also in-

debted to her at the time in a large amount, for rents previously collected by him as her agent, and which be longed to her. It appears, therefore, that at the time of the date of this note the defendant was actually indebted to his mother over $500, for cash received by him for rents belonging to her, and interest thereon. Now there is not a particle of evidence, outside of these papers, to show that the defendant ever paid his mother a single shilling. I insist, therefore, that the evidence shows that there was no consideration for this note, and it is consequently void. 2d. The above remarks apply equally to the agreement to pay for board, and the receipt in full. And in addition, it may be said that before the dates of these last papers, respectively, the defendant had received a still larger amount of rents, and also between $400 and $500 from Gardiner. I insist that upon this evidence, the agreement to pay for board, and the receipt in full, in the absence of any evidence that the old lady knew the state of the accounts between them, were absolutely void and without consideration. 3d. But if wrong in the above position, still each and every of these papers were presumptively fraudulent and void, and incapable of being made legal and valid in favor of the defendant, against the estate of his mother, upon mere proof of execution alone. At the time of the execution of these papers the defendant was the agent of his mother, and not only on account of the existence of the relation of principal and agent, but also of that of parent and child, between the parties, it was incumbent upon the defendant, before the estate could be made liable upon either one of them, to show that it was fair and equitable in all its parts ; that it was read over to, and understood by, this old lady, before it was signed by her. There was no such proof given, and the surrogate therefore erred in allowing and giving effect to these papers. (*Brock* v. *Barnes' Ex'rs,* 40 *Barb.*

521.   *Lansing* v. *Russell*, 13 *id.* 510, 524.   *Sears* v. *Shafer*, 2 *Seld.* 268, 272.   *Dent* v. *Bennett*, 7 *Sim.* 539.   1 *Story's Eq. Juris.* §§ 309, 315.)   As already stated, there is no evidence in the case, outside the papers, and proof of their execution, tending in the slightest degree to establish their validity.   In order to establish a claim against the estate by means of these papers, the defendant was called upon to show that at the time of their execution the old lady was fully informed of the state of accounts between them, how much the defendant had received from her rents, and that she knew the contents of the instruments to which her signature was obtained.   It seems to me the case presents extraordinary features, which call for the application to it of the principle above stated; and in disregarding this principle the surrogate erred, and his decree should be reversed.

II.   The surrogate also erred in admitting evidence.   He allowed the defendant to testify, in his own behalf, to transactions had personally between himself and his testatrix.   This was contrary to the express provisions of the statute.   (*Code*, § 399.)

III.   The surrogate also erred in overruling the plaintiff's claim that the defendant should be required to render an account as agent of his testatrix, under oath, in the usual manner.   The defendant had been the agent of his mother in collecting her rents and other moneys, and it was a case where the law should compel, and does require, him to render an account, under oath, of his receipts and disbursements as such agent.   In refusing to require him to render such an account the surrogate erred, and his decree should be reversed.   (*Wiggin* v. *Gans*, 4 *Sandf.* 646.)   The decree should be reversed, with costs, and the case remitted to the surrogate, with directions to settle the accounts upon proper principles.   (*Wagener* v. *Reiley*, 4 *How.* 195.)

Comstock *v.* Comstock.

*By the Court,* JAMES, J. It is a well settled rule of equity jurisprudence, that all gifts, contracts, or benefits, from a principal to one occupying a fiduciary or confidential relation to him, are constructively fraudulent and void. The court, in such cases, acts upon the principle "that if confidence is reposed, it must be faithfully acted upon; if influence is acquired, it must be kept free from the taint of selfish interest, and cunning and overreaching bargains." "In this class of cases, there is often found some intermixture of deceit, imposition or overreaching advantage, or other mark of positive or direct fraud. But the principle upon which courts of equity act in regard thereto, stands, independent of any such ingredient, upon a motive of general public policy."

Among the relations subject to the foregoing rule are those of parent and child, attorney and client, and principal and agent. (*Story's Eq. Juris.* §§ 309 *to* 315.) Story says: "In all cases of this sort, the principal contracts for the aid and benefit of the skill and judgment of the agent, and the habitual confidence reposed in the latter makes all his acts and statements possess a commanding influence with his principal. It is therefore for the common security of all mankind that gifts procured by agents, and purchases made by them, from their principals, should be scrutinized with a close and vigilant suspicion." So of notes, bills, contracts, releases and obligations.

Indeed, agents are not permitted to deal validly with their principals in any case, except upon showing the most entire good faith, a full disclosure of all the facts and circumstances attending the transaction, and an absence of all undue influence or imposition. Transactions which would be held unobjectionable between other parties, are often declared void, if between persons occupying confidential relations.

In the present case the relation of principal and agent existed between the parties to the note, the receipt and

the contract, strengthened by the further and other relation of parent and child; the parent was old and feeble; she was at least seventy-seven years of age when the first instrument bears date; she lived with her son; the instruments were in his handwriting; they were all for his benefit; no object, benefit or advantage appearing to the other side.

There is a still further suspicious circumstance; the note was dated May 1, 1857, the agreement to pay for board December 9, a will made by the mother giving her property to the respondent and his brother Daniel, December 12, 1857, and followed by the receipt dated September 14, 1858. This last instrument so diminished the assets that the note and claim for board swallowed up the entire estate.

Upon the hearing before the surrogate, the respondent barely proved the signature of the testatrix to the several instruments in question. He offered no evidence of the facts and circumstances under which they were made, of their consideration, their object and purpose, their freedom from undue influence or imposition; or of good faith.

But we do not place our decision in this case upon the ground of actual fraud. We only go so far as to say that the respondent occupied a confidential relation to the testatrix at the time the aforesaid instruments purport to be executed; that because of that relation they were presumptively fraudulent, and void as to her or her representatives, which presumption could only be overcome by actual proof; that as no such proof was made or offered, the presumption continued, and that presumption should have caused the rejection of said items. In this particular the surrogate erred, and his decree should be reversed, and the cause remitted for rehearing; and the costs of this appeal should be paid by the executor in person.

[St. LAWRENCE GENERAL TERM, October 2, 1866. *Bockes, James, Rosekrans* and *Potter*, Justices.]