HERBERT R. ALLEN et al., by HEZEKIAH E. LAWRENCE, Their Guardian ad Litem, Appellants, *v.* LILLIAN F. LA VAUD et al., Respondents.

Evidence — undue influence — presumption from confidential relations between adult child and parent in feeble mental and physical condition — when deeds executed to such child by such parent to the exclusion of other heirs are open to question in court of equity.

When a mature child, who was in control and possession of a dependent parent stricken and weakened with a fatal and progressive disease which had disabled his body and to some extent affected his mind and necessitated the constant use of stimulants, secured from him, a few days after taking possession of him and a few days before his death, more or less gratuitous conveyances, stripping him of all his property and in disregard of others who were the natural objects of his affection and bounty, a case is presented within the rule which casts upon the beneficiary the burden of showing he has not exercised a forbidden influence, and that the conveyances are fair and honest and free from fault which demands the condemnation of a court of equity.

*Allen* v. *La Vaud*, 159 App. Div. 914, reversed.

(Argued December 10, 1914; decided January 5, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered November 24, 1913, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Richmond J. Reese, Alfred B. McNamara* and *John Willett* for appellants. The burden of proof is upon the defendant to show that the transaction was a fair one. (*Ten Eyck* v. *Whitbeck,* 156 N. Y. 341; *McClellan* v. *Grant,* 83 App. Div. 599; *Sheehan* v. *Erbe,* 77 App. Div. 176; *Barnard* v. *Gantz,* 140 N. Y. 249; *Matter of Budlong,* 126 N. Y. 423; *Allore* v. *Jewell,* 94 U. S. 511; *Tyler* v. *Gardiner,* 35 N. Y. 559; *Boyd* v. *De la Montagnie,* 73 N. Y. 498; *Sears* v. *Shafer,* 6 N. Y. 268; *Slack* v. *Rees,* 66 N. J. Eq. 447.)

*James E. Kelly* and *Ernest T. Lindemann* for respondents. The burden of proof was not upon the defendant La Vaud to show the transaction was a fair one. (*Jones* v. *Jones,* 137 N. Y. 610; *Donlon* v. *Donlon,* 154 App. Div. 212.)

HISCOCK, J. This action was brought to set aside two deeds made by one Philip S. Biglin and his wife, the defendant Louisa A. Biglin, to his daughter, the defendant La Vaud, on the grounds that said Biglin was of unsound mind, and that said conveyances were procured by duress and undue influence exercised over him by the said defendant La Vaud. The conveyances were executed as part of one and the same transaction, and the defendant Mrs. Biglin joined in them simply for the purpose of cutting off her right of dower.

The trial justice announced at the close of plaintiff's case, and without hearing any evidence offered in behalf of the defendants, that he would dismiss the action.

This determination seems to have been largely based on the failure of proof that the grantor was incompetent mentally. What was then said by him would seem to indicate that his original purpose was to dismiss the action as on a nonsuit because the plaintiffs had produced no evidence sustaining their cause of action, rather than on a consideration of the merits with findings of fact. In the end, however, such findings were made to the effect that said conveyances were valid, and that no undue or improper influence was exercised by the grantee over the grantor. While this theory of the disposition of the case is questioned by the appellants on this appeal, we shall accept it as controlling on us, and consider whether the findings made by the trial justice were supported by the evidence.

We think that credible evidence which the trial justice was bound to believe in the absence of contradiction had established the following facts at the time the trial closed:

The grantor was of an age which had permitted service in the Civil war. His wife was a physical and mental wreck and signed the deeds with a mark. His only next of kin were the defendant La Vaud, who was his daughter, living with her husband, and the plaintiffs, who were the children of a deceased daughter, ranging in age from about nine years upward.

Until a comparatively short period before the execution of the conveyances these three families had lived in adjoining houses, but after the death of the plaintiffs' mother their father, having remarried, moved elsewhere, taking with him all of his children except the youngest son, Philip, who was left with his grandparents. The grantor was especially attached to this grandchild, who had been named after him, and for whom he showed his fondness in various ways. The grandparents continued to live in their house by themselves until a few days before the occurrences in question, when the defendant La Vaud caused them to be moved to the house occupied

by her. At the same time Philip's father was requested to take him away at once, and from the time the grantor was thus moved to this daughter's house there were no members of the household except his infirm wife, the defendant daughter and her husband, and the deeds were executed inside of a week from the date of his removal. While two or three friends were permitted to see him, a Catholic priest whom he had requested to visit him was not permitted to see him, the daughter assigning as a reason that her father was asleep and the husband giving the more unfriendly and harsh excuse that he would not allow a priest to enter the house.

The grantor for at least two years before the execution of the deeds had been afflicted with heart disease and with degeneration of the arteries. Some weeks before their execution these diseases had become acute, resulting in a dropsical and seriously weakened condition which made him incapable of moving without help and made him expectant of death. Stimulants were systematically administered to him. The diseases likewise impaired his mind, at least to the extent of making its operations slower and more difficult, and he died within about a week after the execution of the conveyances.

While the plaintiffs rather strangely omitted to give any evidence concerning the value of the real estate covered by the deeds, it apparently was of considerable value and the conveyance thereof stripped the grantor of all of his property so that at the time of his death a few days later he left no personal effects or real estate. There was no evidence concerning the consideration for the conveyances except as it is to be gathered from the recitals in the deeds, and from these recitals in connection with the grantor's lack of property at the time of his death, we think it must fairly be inferred that one of them at least was executed for a nominal consideration.

On these facts the question is presented to us whether a court by its findings should give validity to a conveyance

executed under such rather sinister conditions unrelieved by any word of explanation or evidence of honesty and fair dealing on the part of the person benefited. The question suggests the answer.

It is familiar law that certain classes of contracts are inherently subjects of suspicion and scrutiny, and when the assailant of a conveyance has established its character as included within one of these classes he has made a *prima facie* case and cast upon the grantee the burden of showing that it was the product of a fair and honest transaction free from any undue influence. Such transactions are those between guardian and ward, attorney and client and trustee and *cestui que trust* where the dominating party has secured what appears to be a gratuitous benefit or undue advantage. As was said by Judge ANDREWS in *Matter of Smith* (95 N. Y. 516, 522): " When the (this) situation is shown, then there is cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure direct or indirect, of the party benefited. This rule does not proceed upon a presumption of the invalidity of the particular transaction, without proof. The proof is made in the first instance when the relation and the personal intervention of the party claiming the benefit is shown." (See, also, *Nesbit* v. *Lockman*, 34 N. Y. 167.)

While perhaps it furnishes a less common class of cases, there can be no question that the relation of parent and child may also at times become the basis for the application of this rule of evidence and burden of proof. (*Sears* v. *Shafer*, 6 N. Y. 268, 271; *Wood* v. *Rabe*, 96 N. Y. 414, 426; *Doheny* v. *Lacy*, 168 N. Y. 213, 222.)

In the case last cited Judge GRAY wrote as follows: "That rule, (of the common law concerning confidential

relations as affecting contracts) within the cases, requires as a basis for its application that a fiduciary relation exist between the parties, which will give to the one, in legal presumption, a controlling influence over the other. Such would be the relation of parent and child, guardian and ward. * * * In these confidential relations, the situation of the parties is regarded as unequal and as conferring upon one a certain control, or domination, over the will, conduct, and interests of the other. Transactions between them are, therefore, scrutinized closely and presumptions arise of their impropriety, which must be met where an advantage is derived by the presumably dominant party."

It will be assumed without consideration that this rule as applied to the relation of parent and child primarily contemplated the possibility of the exercise of undue influence by the parent over the child rather than the reverse operation of the relationship. There is, however, no doubt that it may be applied where the parent has become the weaker personality. It will also in like manner be assumed that the bare relationship of parent and child standing in positions of equality would not bring within this rule a gift from the former to the latter, But when there are added the facts that a mature child in control and possession of a dependent parent stricken and weakened with a fatal and progressive disease which has disabled his body and to some extent affected his mind and necessitated the constant use of stimulants, a few days after taking possession of him and a few days before his death has secured from him more or less gratutious conveyances stripping him of all of his property and in utter disregard of others who were the natural objects of his affection and bounty, we have no doubt that a case is presented within the rule established by many decisions which casts upon the beneficiary the burden of showing she has not exercised a forbidden influence, and that the conveyances are fair and honest and free from fault

which demands the condemnation of a court of equity. (*Green* v. *Roworth,* 113 N. Y. 462; *Barnard* v. *Gantz,* 140 N. Y. 249, 256–258; *Slack* v. *Rees,* 66 N. J. Eq. 447; *Ten Eyck* v. *Whitbeck,* 156 N. Y. 341, 353; *Comstock* v. *Comstock,* 57 Barb. 453; *Gibson* v. *Hammang,* 63 Neb. 349; *Street* v. *Goss,* 62 Mo. 226; *Davis* v. *Dean,* 66 Wis. 100, 108; *Highberger* v. *Stiffler,* 21 Md. 338, 352. See, also, as affirming the same principle in the case of other relationships, *Sears* v. *Shafer, supra; Boyd* v. *De La Montagnie,* 73 N. Y. 498.)

It may be that this grantee can meet this burden and that by evidence at her command the appearances which now disparage the character of her father's deeds to her may be dissipated and the latter be shown to be the natural and just results of good and sufficient reasons. All that we are required now to say is that the burden was thrown upon her of producing such evidence, and she having failed to do this, the judgment in her favor was not justified and must be reversed.

It is, therefore, recommended that the judgment be so reversed and a new trial granted, costs to abide event.

WILLARD BARTLETT, Ch. J., CHASE, HOGAN, MILLER, CARDOZO and SEABURY, JJ., concur.

Judgment reversed, etc. .