WILLIAM E. ECKERSON et al., Plaintiffs, v. EDITH C.
ECKERSON, as Executrix, etc., Defendant.

(Supreme Court, New York Special Term, February, 1918.)

Deeds — action to set aside — power of attorney — evidence — burden
of proof — conveyances.

> Where transactions between an enfeebled mother over ninety
> years of age and her son, a strong and dominating personality
> about sixty years of age, who had been acting for many years
> as her business agent and attorney in fact under a general
> power of attorney, result in gifts from her to him of practically
> all her property, the burden of proof in an action to set aside
> such transfers is upon the defendant to rebut the presumption
> of undue influence; and where there is no testimony that the
> deeds were read to the mother or that she knew what she was
> signing, and because of the fact that she conveyed a part of the
> identical property to another grantee within a short time there-
> after there is an inference that she did not know that she was
> signing the deeds sought to be set aside, defendant has not
> sustained the burden of proof and said conveyances will be set
> aside.        ·    .

ACTION by plaintiffs as the committee of an incompe-
tent to set aside certain transfers of real property;
also to set aside the transfer of certain shares of the
American Encaustic Film Company.

Feiner & Maas, for plaintiffs.

Robert J. Mahon and McIntosh Kellogg, for
defendant.

COHALAN, J. Plaintiffs, as the committee of Sophia
Eckerson, an incompetent, sue to set aside the trans-
fers of two parcels of real property situate in the
borough of Manhattan, and also to set aside the trans-
fer of 370 shares of stock of the "American Encaustic
Film Company." The transfers were made by the

incompetent to her only son John C. R. Eckerson, now deceased, and it is asserted that they were made through incompetency, fraud and undue influence. In May of 1914 the incompetent was ninety-two years of age, and the transferee was about the age of sixty years. He had been engaged in the real estate business and had for years managed the affairs of his mother. She was possessed at that time of four parcels of real estate, as follows: No. 910 Sixth avenue, No. 362 West Fifty-eighth street, No. 171 West Eighty-seventh street, all in the borough of Manhattan, and a house and lot situate in Nyack, Rockland county. She also owned 370 shares of stock of the American Encaustic Tiling Company. Aside from these valuable properties, the only other property she owned was two mortgages aggregating the sum of $3,500, and money in bank not exceeding the sum of $3,000. It is not disputed that all the property involved in the transfers was worth about the sum of $125,000, and the remainder of her property did not exceed in value the sum of $8,000. The plaintiffs, constituting the committee, are the three surviving children of John C. R. Eckerson by his first wife and are the grandchildren of the incompetent. Edith C. Eckerson is the surviving wife of the decedent, his executrix, and the defendant herein. On October 7, 1912, when she was ninety years of age, the incompetent fell and sustained a fracture of her hip. Since that time she has been an invalid and unable to walk. She has been cared for by one of the plaintiffs, Mary W. McMonegal. Her physician testified on the trial that because of her physical condition and her advanced years it has never been advisable to reset the fractured hip. The testimony is that from October 7, 1912, until June, 1914, after the transfers of the real property, the incompetent was confined to her room under the care of a

nurse. In addition to the injuries from which she severely suffered, she had other organic troubles, incident to her extreme age. When John C. R. Eckerson died in October, 1916, it developed that he was insolvent, and his estate now owes at least the sum of $75,000. After his mother's accident on November 14, 1912, he obtained from her the execution of a general power of attorney in his favor. There is evidence in the case that the incompetent suffered for a time from traumatic insanity, which developed maniacal tendencies. No point, however, is made by the plaintiffs that the incompetent was actually insane, either at the time she signed the power of attorney or at the time she executed the conveyances in suit, but there is no question but that she was senile and weak in body and mind during the periods of all these respective transactions. After the son had secured the power of attorney, although he received the entire proceeds from his mother's property, he only paid for her maintenance and support the sum of $2,000 a year, and he never made any accounting to her under the power of attorney. The transfers in question were procured on May 30, 1914. On that day Mary W. McMonegal, who from her early infancy had lived with her grandmother, was absent, and John C. R. Eckerson, her father, went to his mother's home and brought with him four deeds and, with the nurse present as a witness, had his mother sign the instruments with an " X " mark, although she was able to read and write. The nurse testified that she had no recollection of the presence of a notary public at the bedside. The notary public, however, on the trial testified that he was present at the time of the execution of the deeds. Some time later the deeds were mailed to Mount Morris, Livingston county, to the nurse for her signature as a witness thereto. At that time the notary public had not as

yet added his acknowledgment to the deeds. The deeds remained unrecorded until July 20, 1916, more than two years after their execution. There is no testimony in the record that the incompetent read the deeds, that she knew what they were, that she expressed a desire to execute the same, or of any of the circumstances which induced her to affix her cross mark to the same. In the absence of such proof, a transaction which conveys upwards of $75,000 worth of real property from an aged and infirm mother in a senile condition to her only son, who had been acting as her business agent, is at least a matter of suspicion. It is significant that within two weeks after the execution of these deeds the incompetent transferred the property No. 171 West Eighty-seventh street to her granddaughter, Mary W. McMonegal. This property apparently she had transferred to her son on May 30, 1914. The stock transfer occurred on July 8, 1916. It is undisputed that on that day there was a quarrel between the mother and son over the transfer, and that it was participated in by the grandaughter, Mrs. McMonegal. The decedent brought with him the three certificates of stock and asked his mother to sign the certificates. She refused for some time to comply with his wishes, and, finally, after Mrs. McMonegal had stated that her grandmother had given her certain valuable real property and jewelry, and her father had claimed that he had received nothing from his mother, for the sake of peace the incompetent signed the certificates. These stock certificates have attached thereto acknowledgments of the subscribing witnesses taken by a notary public. It appears, however, that while these acknowledgments state that " Before me personally appeared Mary W. McMonegal and Edith C. Eckerson," they in fact did not appear before the notary. If any acknowledgment was

taken to the certificates it was taken over the telephone. While the transaction occurred on July 8, 1916, the acknowledgments were not taken until nearly two weeks later. Even were the burden of proof upon the plaintiffs to prove actual fraud in connection with the respective transfers, this burden has been sustained, and it is my view that the transfers should be set aside. The law, however, does not require the plaintiffs herein to prove actual fraud in connection with the transfers. These transactions were between an enfeebled mother and her son, who was acting as her business agent and attorney in fact. They were gifts of practically all of her property. Under such circumstances, when such confidential relations are shown to exist, the law presumes undue influence; it casts upon the defendant the burden of disproving the same and showing by convincing evidence to the conscience of the court that the transactions were understood and were the free and voluntary act of the donor; of showing in brief that no undue influence or coercion of any sort was exercised in order to obtain the property. *Allen* v. *La Vaud,* 213 N. Y. 322; *Nesbit* v. *Lockman,* 34 id. 167; *Sears* v. *Shafer,* 6 id. 268. In the case of *Allen* v. *La Vaud,* the court said: " It is familiar law that certain classes of contracts are inherently subjects of suspicion and scrutiny, and when the assailant of a conveyance has established its character as included within one of these classes he has made a *prima facie* case and cast upon the grantee the burden of showing that it was the product of a fair and honest transaction free from any undue influence. Such transactions are those between guardian and ward, attorney and client and trustee and *cestui que trust* where the dominating party has secured what appears to be a gratuitous benefit or undue advantage. * * * While perhaps it furnishes

a less common class of cases, there can be no question that the relation of parent and child may also at times become the basis for the application of this rule of evidence and burden of proof. * * * But when there are added the facts that a mature child in control and possession of a dependent parent stricken and weakened with a fatal and progressive disease which has disabled his body and to some extent affected his mind and necessitated the constant use of stimulants, a few days after taking possession of him and a few days before his death has secured from him more or less gratuitous conveyances stripping him of all his property and in utter disregard of others who were the natural objects of his affection and bounty, we have no doubt that a case is presented within the rule established by many decisions which casts upon the beneficiary the burden of showing she has not exercised a forbidden influence, and that the conveyances are fair and honest and free from fault which demands the condemnation of a court of equity.'' In the case at bar there are facts which actually create a presumption of undue influence, if not of fraud itself. We find a grantor of advanced age—ninety-two years old at the time of the first conveyance, and ninety-four years old at the time the stock was transferred; there is a son of a strong and dominating personality, who had been acting as her business agent for many years, and who had been acting as her attorney in fact under a general power of attorney. It was testified to by all the parties herein that the grantor was not only physically enfeebled, suffering from a fracture of the hip, hardening of the arteries and weakness of the heart and lungs, but that her mind was much impaired; that she had been actually insane for at least three months, and had been suffering from hallucinations and delusions for a much longer period. While she did not re-

side with her son, he visited her twice a day and seized an occasion when no other relative was present to procure an execution of these deeds. Although she subsequently signed her name, the deeds were not signed, but were simply evidenced by a cross mark. There is no testimony that the deeds were read to her, or that she knew what she was signing, and there is the inference, therefore, that she did not know what she was signing, because of the fact that she conveyed two parcels of the identical property to another grantee within a short time thereafter. It would seem that these facts established a confidential relationship existing between the mother and son, and it was incumbent upon the defendant to rebut the presumptions in order to sustain the validity of the conveyances. The defendant must show that these transactions were the free and voluntary acts of the incompetent; that she knew what she was signing and that she signed without the exercise of undue influence. Under the law as laid down in the higher courts of this state, it is clear that the defendant has not met the burden of proof; that the presumption of undue influence has not been explained away or rebutted, and that, in line with the authorities, the conveyances must be set aside. It matters not that a subsequent transferee has apparently profited by her grandmother's condition; all the property owned by the incompetent should be hers to enjoy during the remainder of her natural life.

Judgment accordingly.