IRENE ANDRUSS MEANEY, Appellant, *v.* WILLIAM P. MEANEY, Respondent.

First Department, May 29, 1925.

Deeds — action by wife to set aside deed of property to husband made without consideration — action is based on undue influence and coercion — at time of transfer parties were not living together — defendant claimed to have evidence of plaintiff's infidelity — plaintiff made out prima facie case of undue influence and coercion — defendant failed to overcome prima facie case and deed must be set aside.

In an action by a wife to set aside a deed of property from her to her husband, which action is based on an allegation that the deed was executed through the undue influence and coercion exercised by the husband, the wife made out a *prima facie* case by evidence showing that the parties were not living together at the time the deed was executed; that they had had serious marital troubles; and that the husband claimed to have evidence of the plaintiff's infidelity which he threatened to use unless she would consent to the transfer of the property to him.

The wife's *prima facie* case cast the burden upon the husband to introduce evidence sufficient to free himself from the suspicion that the deed was executed through undue influence and coercion exercised by him. He failed to meet that burden, and, therefore, the deed must be set aside.

DOWLING, J., dissents.

APPEAL by the plaintiff, Irene Andruss Meaney, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 30th day of July, 1923, upon the decision of the court rendered after a trial at the New York Special Term.

This action is brought to set aside a deed made by the plaintiff to her husband, the defendant.

*Walsh & Hennessy* [*Francis X. Hennessy* of counsel; *John P. Walsh* with him on the brief], for the appellant.

*Mapes & Raynor* [*Orson A. Raynor* of counsel], for the respondent.

MARTIN, J.:

The plaintiff seeks to set aside a deed by the terms of which she conveyed to the defendant an interest in real property.

The parties were married in 1915. They have two children, one about five and the other six years old. In 1919 plaintiff inherited the three-story and basement dwelling No. 132 Manhattan avenue, New York city, from her grandmother. These are the premises conveyed by the deed which plaintiff seeks to have set aside.

From the time of the marriage down to about January 12, 1921, the parties lived together and for some time prior to January, 1921,

they had been living in No. 132 Manhattan avenue, New York city.

The appellant contends that her signature to the deed was obtained through undue influence and coercion exercised by her husband, through her fear of him and his threats to her and through his constant pressure upon her to deed him this property or suffer certain threatened results.

At the time of the conveyance there existed the greatest enmity and bitterness between them. The deed was executed in the office of defendant's lawyer three days after her own attorney had refused to permit her to make a deed of this same property to her husband.

The defendant says that, after coming into the inheritance, his wife commenced to frequent dance halls and to associate with dancing instructors and men objectionable to him. He charged her with many offenses. Their quarrels resulted in a shooting affray in which Mrs. Meaney received a severe pistol shot wound. Their numerous quarrels and the many charges of infidelity made by the husband against his wife indicate that at the time of the execution of the deed the parties were unfriendly. There apparently was a lack of love or affection, and no reason appears for a gift from plaintiff to defendant.

The defendant testified: " Mrs. Meaney wanted to turn over the Manhattan Avenue property to me, after she had been coming down to 39th Street for a period of two or three months two or three times a week, and begging me to come back and I declined, and finally after a lot of persuasion on the part of her friends and my friends and the relatives and for the sake of the children I decided to go back. She said that she would turn the house over to me, that she was sorry for the life she had led and would lead a different life, and I would be able to run the house, and furthermore she said that she would ask my sister to come up there to live and help take care of the children. Q. Did you ever hear a conversation between Mrs. Meaney and Mrs. Neff, at which you were present, regarding Mrs. Neff coming to live at 132 Manhattan Avenue? A. Yes, sir. I was present on one occasion when Mrs. Meaney told Mrs. Neff that she was going to turn the house over to me; that she was sorry for the life she had been leading, and that if Mrs. Neff would come and help her with the children she thought we would all be very happy. Mrs. Neff hesitated at first about it and finally she decided to do so."

In accordance with this arrangement Mrs. Meaney, in April, consulted her lawyer, Mr. Wood, about drawing a deed conveying No. 132 Manhattan avenue to Mr. Meaney. There were con-

ferences on April seventh, eleventh, twenty-second, June second and sixth. Mr. Wood was adverse to the plan. It was his opinion that it would not accomplish what the parties desired, namely, a settlement of their differences. He appears to have suggested a conditional conveyance but Mrs. Meaney told him that would not satisfy Mr. Meaney. In fact both argued for an unconditional straight deed from the wife to the husband.

On June 6, 1921, Mrs. Meaney wrote the following letter to Mr. Wood, her attorney:

" DEAR SIR.— I write to ask if you will reconsider your refusal to transfer the sale of 132 Manhattan Avenue to Mr. Meaney. I assure you that I shall not blame you if I should have cause to regret same later on. I firmly believe that à transfer of the house will be the settling up of our family troubles. Mr. Meaney and I prefer that you handle this transaction.

The deeds for 132 I cannot find in my safe deposit box. So I presume they are at your office.

" Trusting you will agree to my request, I am,
                        " Yours very truly,
                    " IRENE ANDRUSS MEANEY."

She explains this letter by saying her husband caused her to send it to her lawyer. Defendant denies this.

The respondent asserts that the question at issue here is not what Mr. Wood thought of the matter or what his opinion was, but what Mrs. Meaney's· intention was after being fully advised as to the legal effect of such a conveyance.

In *Allen* v. *LaVaud* (213 N. Y. 322, 326) it is said: " It is familiar law that certain classes of contracts are inherently subjects of suspicion and scrutiny, and when the assailant of a conveyance has established its character as included within one of these classes he has made a *prima facie* case and cast upon the grantee the burden of showing that it was the product of a fair and honest transaction free from any undue influence."

In *Matter of Smith* (95 N. Y. 516, 522) the court said: " Dealings between parties thus situated, resulting in a benefit conferred upon, or an advantage gained by the one holding the dominating situation, naturally excite suspicion, and when the situation is shown, then there is cast upon the party claiming the benefit or advantage, the burden of relieving himself from the suspicion thus engendered, and of showing either by direct proof or by circumstances that the transaction was free from fraud or undue influence, and that the other party acted without restraint and under no coercion, or any pressure direct or indirect, of the party

benefited. This rule does not proceed upon a presumption of the invalidity of the particular transaction, without proof. The proof is made in the first instance when the relation and the personal intervention of the party claiming the benefit, is shown." (See, also, *Hunter* v. *McCammon,* 119 App. Div. 326.) The testimony of Mr. Wood indicates that defendant coerced plaintiff into making the deed: " Q. Was she under any restraint? A. Yes, I think she was, very much under restraint. Q. What was the nature of that restraint? A. As I stated before, Mr. Meaney told me that he had some evidence, which he told me of, which involved indiscretions on Mrs. Meaney's part if they were true, and he was using that deliberately as a club over her, there is no question about it."

Mr. Meaney was a police officer and he appears to have been accumulating evidence against his wife. He testified: " Q. Why did you preserve it? A. I thought it an improper and suggestive letter, and I preserved it for that reason because I thought I might want to use it sometime. Q. Was it because you wanted to hold it as a club over your wife's head? A. Well, I wanted the letter. I don't know anything about holding it as a club. I found it on Mrs. Meaney's dresser, and I wanted to keep it."

If the defendant had wished to protect the two children, as he now asserts, the property might have been placed in trust for them. Another piece of property owned by the plaintiff was so placed at the suggestion of defendant.

Although the defendant says he was dissatisfied with the conduct of plaintiff and because of such conduct he could not live with her, it is evident that he was willing to forget his conscientious scruples, overlook her wrongdoing, and condone her offenses if she gave him her property. The price of forgiveness imposed by the husband was the execution of the deed. If he had reasons for refusing to live with her, they appear to have quickly vanished upon receipt of the deed.

The judgment should be reversed, with costs, and judgment entered for the plaintiff, with costs, directing that the conveyance be set aside.

CLARKE, P. J., FINCH and MCAVOY, JJ., concur; DOWLING, J., dissents.

Judgment reversed, with costs, and judgment directed for plaintiff setting aside the conveyance, with costs. Settle order on notice.