◼ In the Matter of the Estate of ANGELO C. LoGUIDICE, Also Known as ANGELO C. LoGIUDICE, Also Known as ANGELO C. LaGUIDICE, Deceased. THOMAS LoGUIDICE, Also Known as THOMAS LaGUIDICE, as Executor of ANGELO C. LoGUIDICE, Deceased, Respondent; FRANK M. LoGUIDICE, JR., Appellant.— In a proceeding to set aside a lease executed by the decedent upon the grounds that the provisions of the lease were unconscionable and the lease was a product of undue influence, the appeal is from a decree of the Surrogate's Court, Kings County (Bloom, S.), dated June 27, 1990, which set aside the lease.

Ordered that the decree is affirmed, with costs payable by the appellant.

Frank M. LoGuidice, Jr., executed a lease with his uncle, the decedent, on June 1, 1984. The decedent had just been released from the hospital one week before, after having suffered a heart attack. Four days later, the decedent suffered another heart attack and died two weeks after that. The terms of the lease which the nephew presented to the decedent called for the nephew to rent the decedent's house for a term of 10 years with two renewals of 10 years each, at the sole option of the nephew. The rent was less than one-quarter the market rental value of the house, and the lease called for no increases in the rent over the potential 30-year period. The

decedent was to be responsible for all maintenance, taxes, and other expenses of the house, including utilities. The lease also gave the nephew as tenant, the unqualified right to sublet the house, but did not give the decedent or his invalid sister any right to remain in the house, which had been their home for approximately 40 years. Furthermore, the lease could not be subordinated, and the tenant could only be evicted for failure to pay rent.

At the time of the execution of the lease, the nephew was a real estate developer and was assisted by his then-fiancée, a law student who has since been admitted to practice. On the other hand, the decedent had only a ninth-grade education, was in ill health, and was at least partially dependent on the nephew. The encumbrance of the lease rendered the house unsaleable, and likely would have generated a negative cash flow. It would have left the decedent and his sister without a place to live, and no income from the decedent's largest asset. Additionally, apparently, the lease would have eviscerated the ability of the decedent's estate to carry out a primary intent of the decedent's will: to care for his invalid sister.

Under the circumstances, the Surrogate's Court properly found that the lease was the product of undue influence (see generally, Allen v La Vaud, 213 NY 322; Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692; Hennessey v Ecker, 170 AD2d 650), and unconscionable (see generally, Mandel v Liebman, 303 NY 88, 93-94; Matter of State of New York v Avco Fin. Serv., 50 NY2d 383, 389; Matter of Friedman, 64 AD2d 70, 84-87). To the extent that any error may have occurred by admitting the testimony of certain interested witnesses, in violation of CPLR 4519 (the Dead Man's Statute), it was harmless, since there was ample evidence to support the Surrogate's Court's findings without resort to any of the objectionable testimony (see, Turner v Danker, 30 AD2d 564; Peters v Morse, 112 AD2d 559, 560). Rosenblatt, J. P., Eiber, O'Brien and Ritter, JJ., concur.