■ In the Matter of ANNE R., Respondent, v ESTATE OF FRANCIS C., Appellant. [651 NYS2d 539] —In a proceeding pursuant to Family Court Act article 5 to establish paternity, the appeal is from an order of the Family Court, Queens County (Fitzmaurice, J.), entered July 7, 1995, which after a hearing, determined that Francis C. was the father of Megan R. Justice Goldstein has been substituted for the late Justice Hart (see, 22 NYCRR 670.1 [c]).

Ordered that the order is affirmed, with costs.

On March 27, 1992, Francis C., a retired police officer, was shot to death while working as a security guard. At the time of his death, Francis C. had been married to Margaret C. for 27 years. Two sons had been born of the marriage. On October 22, 1992, Anne R. (hereinafter the petitioner), an unmarried woman, filed a petition alleging that she had been having an illicit relationship with Francis C. since 1980, and that he was the father of her daughter Megan R., born on October 29, 1982. In an order dated July 7, 1995, the Family Court, Queens County (Fitzmaurice, J.), found "by clear, convincing and satisfactory proof" that Francis C. was the father of the subject child, and entered an order of filiation.

On appeal, the appellant, the estate of Francis C., contends, *inter alia,* that the Family Court's determination was erroneous. We disagree.

A paternity petition must be established by clear and convincing evidence, that is, "evidence which is 'entirely satisfactory' and creates a genuine belief that respondent is the father of the child" *(Matter of Commissioner of Social Servs. [Patricia A.] v Philip De G.,* 59 NY2d 137, 141-142; *see also, Matter of Department of Social Servs. [Andrea F.] v Kevin Y.,* 222 AD2d 504; *Matter of Allen v Lawrence P.,* 208 AD2d 721).

At the trial, the petitioner established that the decedent

openly and notoriously acknowledged paternity. Together with the petitioner, the decedent announced to the petitioner's friends and family that they were expecting a child. The decedent attended the petitioner's baby shower, thanked the guests for attending, and loaded the gifts into his car.

When the petitioner suffered complications with the pregnancy, causing her to give birth prematurely, the decedent rushed to the hospital. Once there, he introduced himself to the hospital staff as the father, and took charge of the situation. The decedent held the child in the Intensive Care Unit of the Hospital, an area traditionally reserved for parents.

Thereafter, the decedent was actively involved in the life of the child. He visited her several times a month, and called almost every day. He attended all of her birthday parties and special celebrations. On those occasions, the decedent referred to Megan as his daughter, and Megan referred to him as her "daddy". He made comments to others such as: "My daughter is getting big?" and "Do you think she looks like me?". He also helped the child to blow out the candles on her birthday cake.

He verbally represented himself to be the child's father at a religious ceremony in 1990, and physically stood where the father traditionally stands during the ceremony. The decedent thanked the priest after the ceremony.

It is well settled that where, as here, the determination as to paternity rests basically on a resolution of credibility, the finding of the Trial Judge, sitting without a jury, is accorded great weight (see, Matter of Susan W. v Amhad Q., 65 AD2d 594). While the decedent's wife, son, and sister in law essentially testified that the decedent was a devoted family man who could not possibly have engaged in so lengthy and duplicitous an affair, the court, having heard and seen the witnesses, was entitled to find in favor of the petitioner on this issue.

Contrary to the appellant's claims, the court's determination that it would not take a negative inference from the fact that the decedent neither made written provisions for the subject child in his will, nor introduced her to his family, was reasonable. In light of the fact that the child was the product of a lengthy love affair, that, for obvious reasons, was a secret from the decedent's wife, the decedent's choice to refrain from such obvious displays is hardly surprising. Indeed, the record overwhelmingly suggests that the decedent openly and notoriously acknowledged paternity within the confines of the isolated community in which his daughter and girlfriend lived.

The Family Court's limited reliance on testimony which may have been inadmissible under CPLR 4519, was harmless, as

there was ample evidence to support the Family Court's findings without resort to the objectionable testimony *(see, Berger v Estate of Berger,* 203 AD2d 502; *Matter of LoGuidice,* 186 AD2d 659, 660; *Turner v Danker,* 30 AD2d 564, 565).

The appellant's remaining contentions are without merit. Miller, J. P., Altman, Krausman and Goldstein, JJ., concur. [*See,* 167 Misc 2d 343.]