OPINION OF THE COURT
Eve Preminger, S.
The tortuous history of this paternity dispute demonstrates the need for clarification of the instances in which DNA results are admissible into evidence and the weight they are to be given in estate proceedings. The undisputed facts are as follows:
*87 Decedent died on January 24, 2000. Petitioner commenced this proceeding to obtain his intestate share of decedent’s estate based on a claim that he is decedent’s nonmarital son (see, EPTL 4-1.2 [a] [2]), and to revoke the letters of administration granted to decedent’s sister, the respondent herein. (SCPA 1001 [1].) Respondent moves to dismiss the application on the grounds that petitioner is not decedent’s biological son. There is no evidence that decedent was married except for his death certificate, where petitioner’s mother identified herself as decedent’s wife. Petitioner’s birth certificate identifies a third party as petitioner’s father.
To support his claim, petitioner asked the court to order a DNA test to be performed on blood samples collected after decedent’s death and retained by the Office of the Medical Examiner after conducting an autopsy. The order was granted over respondent’s objection that posthumously obtained DNA results are not admissible to support a paternity claim in an estate proceeding.
The test results on decedent’s blood samples were definitive. A 0% probability was assigned to the paternity question, and decedent was “excluded” as petitioner’s biological father. The results caused the parties to reverse their positions. Petitioner now contends that a hearing should be held before the issue of paternity is decided. Under the facts presented here, the court disagrees.
A nonmarital child can inherit from his or her father’s estate under clause (D) of EPTL 4-1.2 (a) (2) when a genetic marker test which “had been administered” to the father together with “other evidence” establishes clear and convincing evidence of paternity. In Matter of Janis (157 Misc 2d 999, affd 210 AD2d 101), a child sought an order in a probate proceeding to exhume the remains of her putative father to obtain material for DNA tests, in her attempt to establish standing as distributee to contest the will. Denying the request, Surrogate Roth noted that the EPTL expressly refers to genetic tests that had been administered to the putative father, and construed the statute as requiring such tests to be administered during the decedent’s lifetime to satisfy the clause (D) test.[1] At the same time, however, the court recognized that postdeath genetic marker *88 tests might be admissible under clause (C) of EPTL 4-1.1 (a) (2), a companion clause that provides for a nonmarital child to inherit on a showing of (1) “clear and convincing” evidence of paternity together with (2) evidence that the putative father “openly and notoriously” acknowledged the child as his own. (Matter of Janis, 157 Misc 2d at 1001; see also, Matter of Johnson, NYLJ, Sept. 17, 1998, at 26, col 5; Matter of Sandler, 160 Misc 2d 955.)
There is no basis in law or logic to exclude the results of posthumously conducted DNA tests on a decedent’s genetic material from the category of “clear and convincing” evidence under EPTL 4-1.2 (a) (2) (C). This is particularly true where the material is available without the drastic remedy of exhumation, comes from a reliable source, and is amenable to accurate testing.[2] (Cf., Matter of Anne R. v Estate of Francis C., 167 Misc 2d 343, affd 234 AD2d 375, lv denied 89 NY2d 815.) To hold otherwise would ignore the precision that DNA testing contributes to the paternity issue. (See, CPLR 4518 [d] [genetic test results showing 95% probability of paternity or greater creates rebuttable presumption of paternity].) “Neither the parties nor the courts need be blind to scientific reality.” (King v Tanner, 142 Misc 2d 1004, 1013.) The results of the DNA tests in this proceeding are admissible as relevant to the question of paternity under clause (C) of EPTL 4-1.2 (a) (2).
Where the possibility of paternity is conclusively eliminated by undisputed evidence, there is no issue of fact to be determined in a hearing. Petitioner has submitted no scientific or other “clear and convincing” evidence of paternity to contradict the 0% possibility that decedent was petitioner’s father.[3]
Petitioner’s allegation of decedent’s open and notorious acknowledgment of paternity,[4] even if true, does not require a contrary result. In order to obtain his intestate share petitioner *89 must prove both open acknowledgment and actual paternity (EPTL 4-1.2 [a] [2] [C]), unless possibly an estoppel theory applies (see, Vito L. v Filomena L., 172 AD2d 648), which is not the case here.
Accordingly, the application of the petitioner to revoke the letters of administration granted to decedent’s sister is denied, and letters issued to petitioner as coadministrator are hereby revoked. Respondent’s request for sanctions is denied. The restraints previously imposed on the administrator are vacated as of 30 days from the date of the decree to be entered herein.

. The court also reasoned that the Legislature did not intend to make a distinction between EPTL 4-1.2 (a) (2) (D) and section 519 of the Family Court Act, enacted at the same time, which expressly requires administration of the genetic test prior to death to establish paternity in support proceedings.

. DNA testing is performed on molecules that retain their characteristics and therefore provide a reliable source for postdeath testing. (See, Comment, Who Is My Daddy? Using DNA to Help Resolve Post-Death Paternity Cases, 8 Alb LJ Sci & Tech 151, 170 [1997].) In this proceeding, petitioner does not question the reliability of the testing that he himself requested.

. None of the cases that petitioner relies upon supports a contrary conclusion. (E.g., Matter of Sekanic, 271 AD2d 802 [hearing conducted under EPTL 4-1.2 (a) (2) (C) where no DNA tests were offered into evidence]; Commissioner of Social Servs. [Queisser] v Abizeid, 168 Misc 2d 1005 [hearing conducted where blood tests showed 99.5% evidence of paternity].)

. Petitioner’s mother joined in his request to the court and submitted affidavits which allege that decedent acknowledged petitioner as his son from the time of petitioner’s birth and throughout decedent’s lifetime. Petitioner *89 also submits documentary evidence in which the decedent refers to petitioner as decedent’s “son,” including a lost will dated April 26, 1999, decedent’s tax returns, and some personal memorabilia.