OPINION OF THE COURT
Michael H. Feinberg, S.
In the course of a kinship hearing held to determine whether the petitioner, Manuel Villot, has the right to inherit under EPTL 4-1.2 (a) (2) (C), a motion was made by the attorneys for Ruth Santos, mother of the decedent and grandmother of the decedent’s deceased child, requesting DNA testing. They have represented to the court that there are currently blood samples *973 available of the infant decedent in the hospital as he and his mother died as a result of a car accident.
Under the above EPTL provision a nonmarital child is deemed the legitimate child of his father so that he can inherit if “paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own” (EPTL 4-1.2 [a] [2] [C]), Villot seeks to establish his status under this provision of the law. Attorneys for Ruth Santos seek to eliminate the possibility of the paternity of Villot through DNA testing. This court has every desire to have the most exhaustive quantum of probative information available to arrive at a just decision. Therefore, the motion to test the infant decedent Manuel Noriega Villot’s DNA is granted.
Counsel for the alleged father of the nonmarital child initially opposed the request but ultimately consented when opposing counsel informed the court that a blood sample of the infant was readily available.
The issues before the court are whether DNA testing can be admitted in a paternity proceeding regardless of whether the DNA testing is predeath or postdeath. Additionally, if DNA is admitted to prove paternity, can it also be used to disprove paternity.
EPTL 4-1.2 (a) (2) (D) states that a nonmarital child is a legitimate child of his father so that he and his issue inherit from his father and his paternal kindred if a blood genetic marker test had been administered to the father which together with other evidence establishes paternity by “clear and convincing evidence.” Earlier case law, which was affirmed by the Appellate Division, First Department, held that EPTL 4-1.2 (a) (2) (D) referred to predeath testing and that postdeath testing pursuant to this provision was not admissible (Matter of Janis, 157 Misc 2d 999 [1993], affd 210 AD2d 101 [1994]).
Other cases have sought to admit postdeath DNA testing utilizing EPTL 4-1.2 (a) (2) (C). The state of technology for DNA testing post-EPTL 4-1.2 has advanced to the point that it can determine paternity to a 99-100% scientifically acceptable certainty, clearly meeting a “clear and convincing” standard (People v Wesley, 83 NY2d 417 [1994]).
In view of the above, some courts have sought to introduce DNA testing into evidence to meet the requirement under EPTL 4-1.2 (a) (2) (C), which permits a nonmarital father to prove paternity upon a showing of “clear and convincing evi *974 dence” as well as evidence that the putative father “openly and notoriously” acknowledged the child as his own (Matter of Gentile, 2002 NY Slip Op 40026[U] [2002]).
In Matter of Sandler (160 Misc 2d 955 [1994]), Surrogate Roth allowed paternal grandparents to submit to DNA testing to disprove their son’s paternity of an alleged nonmarital child and directed that both they and the decedent’s alleged non-marital son and the mother of the child submit to DNA testing in an effort to provide the “clear and convincing evidence” that is required to establish paternity under EPTL 4-1.2 (a) (2) (C). The court noted that all persons tested were parties to the proceeding. More recently, although Matter of Bonanno (192 Misc 2d 86 [2002]) dealt with exhumation, Surrogate Preminger, in dicta, wrote that there was no basis in law or logic to exclude the results of posthumous DNA testing from the category of “clear and convincing” evidence of paternity under EPTL 4-1.2 (a) (2) (C) to disprove paternity.
In many of the paternity cases where DNA evidence is requested, a question arises as to whether or not a court can compel a person to submit to a DNA test. Clearly, there is a distinction whether or not the person who is to be tested is a claimant or not. The claimant, by stating that they are a blood kin of the decedent, puts their genetic makeup into issue. Once their genetic makeup is in issue, it opens the door for the court to direct them to submit to DNA testing to determine their status just as a plaintiff in a personal injury action may be compelled to submit to medical testing when they put their medical condition at issue. When the person whose DNA testing is sought is not a claimant, the issue arises as to whether or not a stranger to the litigation may be directed to submit to DNA testing.
Although there appears to be no explicit statutory authority to compel DNA testing on nonparties, in Matter of Sandler, Surrogate Roth allowed the DNA of a collateral relative to determine paternity as well as did Surrogate Fusco in Matter of Nasert (192 Misc 2d 682 [2002]).
A similar issue has arisen in lead paint cases as to whether or not the siblings of the plaintiff can be examined to determine whether plaintiff’s medical condition is on account of lead exposure or the family’s genetic makeup (Andon v 302-304 Mott St. Assoc., 94 NY2d 740 [2000]).
The above statute is ripe for legislative review. Technology has advanced to the point where DNA testing is almost 100% proof or disproof of paternity. Therefore, when DNA is avail *975 able, the second prong of either “open and notorious” under EPTL 4-1.2 (a) (2) (C) and other evidence of EPTL 4-1.2 (a) (2) (D) should be eliminated allowing DNA evidence to be admitted as “clear and convincing evidence” without more.
Fairness and justice dictate that surrogates be allowed to determine the rightful heirs of the decedent especially where the material is available without the drastic remedy of exhumation comes from a reliable source, and is amenable to accurate testing.
Advances in DNA technology, together with its acceptability in the legal and scientific communities, provide a useful tool in postdeath paternity proceedings, especially where evidence does not satisfy the burden of proof (Valente and Palumbo, Posthumous DNA Testing, NYLJ, May 31, 2002, at 3, col 1).
These developments in the field of DNA testing should encourage the Legislature to draft comprehensive statutes sufficiently broad to encompass procedures currently being performed as well as for new procedures developed and found generally accepted as reliable by the relevant scientific community.
Although DNA is admissible, the blood must be drawn under strictly controlled laboratory conditions and the chain of custody meticulously documented. Judge Gerald Sheindlin, in People v Castro (144 Misc 2d 956 [1989]), held that DNA identification evidence is admissible when the tests are performed under adequate conditions and monitored with appropriate safeguards.
In the instant situation, the blood would be drawn under strictly controlled laboratory conditions and the chain of custody meticulously documented.
It is noted that during the hearing the parties agreed that the results of the DNA testing would be binding on both parties as to the issue of paternity.
Accordingly, on consent, movant is to notify opposing counsel of the name of the laboratory where the DNA test is to be held within seven days and Manuel Villot is to make himself available for testing within seven days thereafter.
Movant shall pay for the cost of the test from her own resources (Matter of Sandler, supra).
The hospital is directed to transmit forthwith, upon payment of its appropriate processing and shipping fees, the amount of blood fluid of Manuel Noriega Villot required for testing to the DNA testing center.
*976 The temporary restraining order remains in effect until kinship has been determined by this court. This issue can be revisited if a decision is not rendered within 45 days.