OPINION OF THE COURT
Dennis K. McDermott, S.
*792 Joshua W. Thayer, the decedent herein, died intestate on October 18, 2001 as the result of injuries he sustained in an automobile accident. He was 21 years old, unmarried, and survived by his parents.
Joshua’s girlfriend at the time was Bethaney Soule, then 18 years old and never married. Their relationship had become sexually intimate and, in mid-August 2001, Bethaney became pregnant. Sometime during the latter part of September, Joshua and Bethaney went to his parents’ home and, according to Bethaney, Joshua announced to them that “we [are] going to have a baby.” During the first week of October, Joshua and Bethaney made a similar visit to the home of her aunt, Stephanie Pylman, who testified, “they just stated they were having a baby.” She testified that she admonished them that they needed to grow up and take responsibility, and she recalled Joshua saying that he and Bethaney would raise the baby together. Asked by the court whether Joshua specifically said he was the father, Ms. Pylman said, “No . . . [H]e didn’t say, ‘I’m the father’ or anything like that. He just said, ‘We’ll do it together’,” and that he said, “ ‘We’re going to have a baby.’ ”
Katrina Thayer, Joshua’s mother and the administrator of his estate, testified that she recalled Joshua and Bethaney telling her that they were going to have a baby. However, she also recalled that a week or two before Joshua and Bethaney announced her pregnancy, Joshua told her and his sister that he was not sure that Bethaney was having his child but that it was possible that he was the father. He similarly acknowledged to his grandmother that he could be the father of Bethaney’s child. Thus, shortly after his death but prior to his funeral, Katrina had blood and DNA samples taken from him and preserved for future testing after the birth of the baby.
On May 5, 2002, nearly seven months after Joshua’s death, Bethaney gave birth to a girl who was named Melanie. In July, the preserved blood and DNA material from Joshua and similar material collected from Bethaney and Melanie were analyzed by an authorized and accredited clinical laboratory at the M.I. Bassett Hospital in Cooperstown, New York, and the resulting DNA parentage test report showed a 99.98% probability that Joshua was Melanie’s father.
By petition dated April 17, 2003, Bethaney asks this court to determine that Joshua is Melanie’s father, thus entitling Melanie to be the sole recipient of the proceeds of a settlement in a wrongful death action. Katrina Thayer concedes that her son is *793 Melanie’s father, and the guardian ad litem joins in the petitioner’s request for relief. Despite the parties’ unanimity, the court must be satisfied that the proof adduced is sufficient to satisfy the statute.
EPTL 4-1.2 (a) (2) provides the means by which a nonmarital child’s right to inherit from her father through intestacy may be established after the death of the alleged father. Because there had been no order of filiation made during Joshua’s lifetime and because Joshua had never signed an instrument acknowledging his paternity, the child’s right to inherit from him may be established in only two ways: (1) by clear and convincing evidence of paternity and proof that the father of the child has openly and notoriously acknowledged the child as his own (EPTL 4-1.2 [a] [2] [C]), or (2) by proof that a blood genetic marker test had been administered to that father together with other evidence establishing paternity by clear and convincing evidence (EPTL 4-1.2 [a] [2] [D]).
Interpreting the words “had been administered” (emphasis added) literally, the Appellate Division, Third Department, has held that to satisfy EPTL 4-1.2 (a) (2) (D), the blood genetic marker test must have been made during the alleged father’s lifetime so that receipt of the results of a test conducted postmortem is not authorized by the statute. (Matter of Sekanic, 229 AD2d 76 [3d Dept 1997]; see also, Matter of Janis, 210 AD2d 101 [1st Dept 1994].)
Notwithstanding that the results of a posthumously conducted blood genetic marker test are inadmissible to satisfy EPTL 4-1.2 (a) (2) (D), it has been held that such test results may satisfy the “clear and convincing evidence” component of EPTL 4-1.2 (a) (2) (C), leaving only the issue of the father’s open and notorious acknowledgment of paternity to be addressed. (Matter of Bonanno, 192 Misc 2d 86 [Sur Ct, NY County 2002]; Matter of Seekins, 194 Misc 2d 422 [Sur Ct, Westchester County 2002].)
A blood genetic marker test indicating a probability of paternity of 95% or greater creates a rebuttable presumption that the putative father tested is, in fact, the father of the child. (Family Ct Act § 532 [a].) Here, a test result of 99.98% is more than sufficient to constitute clear and convincing evidence of paternity.
Where the putative father had acknowledged his paternity to the child’s mother and to one of her friends but had admonished the friend to keep such acknowledgment a secret, the court found this to be the antithesis to open and notorious acknowl *794 edgment. (Matter of Gentile, 2002 NY Slip Op 40026[U] [Sur Ct, Nassau County 2002].) Gentile is distinguishable from the instant ease in that the “child” was 42 years old at the time of the alleged father’s death.
In this case, the child was not born until nearly seven months after the father’s death, a situation similar to that in Matter of Wilkins (184 Misc 2d 218 [Sur Ct, Niagara County 2000]). There, however, the only proof that the decedent had acknowledged his paternity had come from the child’s mother whose testimony the court found to be “suspect and self-serving.”
Here, by contrast, shortly after learning that Bethaney was pregnant, Joshua readily acknowledged to his mother, sister and grandmother that he could be the father of the child. In the few short weeks between that time and his unexpected death, he had apparently resolved whatever doubts he might have entertained and he had gone with Bethaney to his mother and to her aunt to announce that they were going to have a baby.
While one commentator has opined that “the likelihood of a decedent’s acknowledging a child still in útero is slim” (Turano, 2000 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 4-1.2, 2003 Supp Pamph, at 43), this court is satisfied that, under the circumstances presented here, the decedent did all that he might reasonably be expected to do to openly and notoriously acknowledge that he was the father of the child that would ultimately be born to Bethaney. The preservation of his blood and DNA material appears to be the result of his mother’s doubts rather than his own.
This court finds under EPTL 4-1.2 (a) (2) (C) that the decedent openly and notoriously acknowledged that he was the father of Bethaney Soule’s unborn child and that the 99.98% probability of paternity indicated in the blood genetic marker test report constitutes clear and convincing proof of his paternity. He is, accordingly, found to be the father of Melanie Soule, born to Bethaney Soule on May 5, 2002.