[812 NYS2d 543]

In the Matter of JAMES E. DAVIS, Deceased. KENYAN G. PENCEAL, Respondent; THELMA DAVIS, as Administratrix of the Estate of JAMES E. DAVIS, Deceased, Appellant.

Second Department, January 24, 2006

APPEARANCES OF COUNSEL

*Law Office of Harry Kresky*, New York City, for appellant.
*Derek P. McDowell*, Brooklyn, for respondent.

**OPINION OF THE COURT**

GOLDSTEIN, J.

The petitioner, Kenyan G. Penceal, claims to be the nonmarital child of James E. Davis, who died intestate on July 23, 2003. At issue here is whether he is entitled to disclosure of biological material of the decedent to conduct genetic marker testing, commonly known as DNA testing, to support his claim.

On March 26, 2004, the petitioner commenced the instant proceeding for a compulsory accounting of the decedent's estate. In her answer to the petition, Thelma Davis, as administratrix of the estate, claimed that the petitioner was not a distributee of the estate and therefore lacked standing to petition for a compulsory accounting pursuant to SCPA 2205.

By notice of motion dated August 12, 2004, the petitioner moved, inter alia, to compel the New York City Medical Examiner to provide biological material of the decedent to a specified independent laboratory for DNA testing, to enable him to establish standing as a distributee. In opposition, the administratrix stated that the petitioner "provided no corroboration, documentary or otherwise, in support of his claim to be the son of the decedent."

In response to this contention, the petitioner submitted an affidavit from a friend of the decedent who claimed that the decedent acknowledged paternity of the petitioner in "private" conversations with her. According to the affidavit, the decedent claimed that the petitioner's mother, who is now deceased, had told the decedent she was getting married and her husband intended to adopt the petitioner.

The parties appeared before the court on October 21, 2004.[1] The petitioner's attorney stated that he was submitting two ad-

---

**1.** Although the administratrix did not include that transcript in her record on appeal, the petitioner submitted a copy of that transcript to this Court as an exhibit to papers submitted in opposition to the administratrix's motion

*(n. cont'd)*

ditional affidavits from the petitioner's stepfather and his maternal aunt. The petitioner's attorney also noted that "a host of witnesses . . . have come in" and were prepared to testify on the petitioner's behalf. The court declined to hear their testimony, finding that DNA testing was the "first step, which might obviate a lot" and render testimony as to whether the decedent openly and notoriously acknowledged the petitioner as his child unnecessary.

In a decision dated January 24, 2005 (*Matter of Davis*, 6 Misc 3d 1020[A], 2005 NY Slip Op 50130[U], *1 [2005]), the court, adopting a position contrary to its position on October 21, 2004, found that DNA testing "will not be ordered unless there is some evidence" that the decedent had openly and notoriously acknowledged that the petitioner was his son, citing EPTL 4-1.2 (a) (2) (C) and *Matter of Seekins* (194 Misc 2d 422 [2002]). The court further found that the affidavit of the decedent's friend constituted some evidence of open and notorious acknowledgment although it "may not be sufficient by itself to establish open and notorious acknowledgment." (2005 NY Slip Op 50130[U], *2.) Based upon that affidavit, the court granted the motion for DNA testing (*see Matter of Davis*, 6 Misc 3d 1020[A], 2005 NY Slip Op 50130[U] [2005]). The order appealed from dated March 18, 2005, directed the Medical Examiner and the petitioner to both submit sufficient biological material to a specified independent laboratory for such testing.

EPTL 4-1.2 (a) (2), which states that a nonmarital child may be considered "the legitimate child of his father so that he and his issue inherit from his father and his paternal kindred," sets forth four ways for the nonmarital child to establish his or her status:

"(A) . . . an order of filiation . . . ;

"(B) the father of the child has signed an instrument acknowledging paternity . . . ;

"(C) paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own; . . .

"(D) a blood genetic marker test *had* been administered to the father which together with other evi-

for a stay of enforcement of the order pending appeal, and that transcript is part of the record on appeal (*see* CPLR 5526).

dence establishes paternity by clear and convincing evidence." (Emphasis supplied.)

Genetic testing is only relevant when the purported nonmarital child seeks to establish his or her status pursuant to EPTL 4-1.2 (a) (2) (C) or (D).

Pursuant to EPTL 4-1.2 (a) (2) (D), posthumous genetic testing is not permissible to establish paternity (*see Matter of Sekanic,* 229 AD2d 76 [1997]; *Matter of Janis,* 210 AD2d 101 [1994]). *Matter of Janis* (*supra* at 101) states that EPTL 4-1.2 (a) (2) (D) "should be construed in pari materia with Family Court Act § 519 (c)" which were enacted simultaneously by the Legislature as part of the same bill (*see* L 1987, ch 434). Although Family Court Act § 519 (c) contains the additional phrase "prior to his death" both provisions use the past tense "had." *Matter of Janis* (*supra* at 101) states that "EPTL 4-1.2 (a) (2) (D), phrased as it is in the past tense, clearly does not contemplate the administration of such a test post-death." In *Estate of DeLuca* (NYLJ, Jan. 15, 1998, at 37, col 2), then-Surrogate Prudenti, interpreting the language of EPTL 4-1.2 (a) (2) (D), found that genetic testing is not permissible pursuant to EPTL 4-1.2 (a) (2) (D) after the putative father's death citing *Matter of Johnson* (NYLJ, Oct. 15, 1997, at 37, col 2) which stated that "for the purpose of establishing paternity pursuant to EPTL § 4-1.2 (a) [(2)] (D), any blood genetic marker or DNA test administered to the child's father must have been administered during the father's lifetime."

EPTL 4-1.2 (a) (2) (C) was enacted six years before the enactment of EPTL 4-1.2 (a) (2) (D) (*see* L 1981, ch 75). According to the Memorandum of the Law Revision Commission Relating to Inheritance by or from Illegitimate (Non-Marital) Children Under Section 4-1.2 of the Estate, Powers and Trusts Law (1980 NY Legis Doc No. 65 [B], at 1, reprinted in 1980 McKinney's Session Laws of NY, at 1639), the purpose of the bill was to ensure the rights of a nonmarital child whose "father has openly treated the child as his own, despite the absence of a judicial declaration or a formal, filed acknowledgment." Accordingly, in order to establish rights pursuant to EPTL 4-1.2 (a) (2) (C) the nonmarital child must establish "both open acknowledgment and actual paternity . . . unless possibly an estoppel theory applies" (*Matter of Bonanno,* 192 Misc 2d 86, 89 [2002]). While EPTL 4-1.2 (a) (2) (D) specifies that blood genetic marker tests

must be used to establish paternity,[2] EPTL 4-1.2 (a) (2) (C) does not specify the nature of the proof of paternity which is required. Indeed, genetic testing of the decedent's toothbrush has been permitted (*see Matter of Kenneth V.,* 7 Misc 3d 250 [2004]).

Posthumous DNA testing is admissible pursuant to EPTL 4-1.2 (a) (2) (C) to establish actual paternity (*see Matter of Morningstar,* 17 AD3d 1060 [2005]; *Matter of Thayer,* 1 Misc 3d 791 [2003]; *Matter of Bonanno, supra; Matter of Sandler,* 160 Misc 2d 955 [1994]). As noted in *Matter of Bonanno* (*supra* at 88), there is no basis in the language of the provision or "logic to exclude the results of posthumously conducted DNA tests on a decedent's genetic material from the category of 'clear and convincing' evidence under EPTL 4-1.2 (a) (2) (C)."

To establish an open and notorious acknowledgment of paternity, there is no requirement that the putative father disclose paternity to all his friends and relatives. An acknowledgment of paternity in the community in which the child lives is sufficient (*see Matter of Anne R. v Estate of Francis C.,* 234 AD2d 375, 376 [1996]). However, in the instant case the affidavit of the decedent's friend does not describe an open and notorious acknowledgment of paternity (*see Estate of Gentile,* 2002 NY Slip Op 40026[U]). The decedent's conversations with the affiant were by her own description "private."

In *Matter of Morningstar* (*supra* at 1060-1061), the Appellate Division, Fourth Department, found that "there is no basis in the language of the statute" for requiring a party to "demonstrate first that decedent openly and notoriously acknowledged" paternity "before DNA testing may proceed."

The question of whether such a requirement should be imposed is a question of first impression in this Department (*see Estate of Poldrugovaz,* NYLJ, Oct. 27, 2005, at 31, col 3). We believe that imposition of such a requirement is consistent with the legislative history of EPTL 4-1.2 (a) (2) (C) which indicates that that provision was enacted, not to create rights for all nonmarital children, but to insure

---

2. Family Court Act § 519 (c) was amended by Laws of 1999 (ch 533, § 5) to replace the phrase "blood genetic marker" with "genetic marker or DNA" test to add a reference to DNA testing (1999 NY Legis Ann, at 314) and to clarify that testing of tissue samples as well as blood was permissible. EPTL 4-1.2 (a) (2) (D) was not amended to conform with the amended language of Family Court Act § 519 (c) and still uses the language "blood genetic marker test."

the rights of nonmarital children known to the decedent and openly acknowledged by the decedent during his lifetime. With respect to the rights of nonmarital children, the State has an interest in minimizing "the potential for disruption of estate administration" (*Lalli v Lalli,* 439 US 259, 271 [1978]) which would not be served by indiscriminate posthumous DNA testing. Although technical advances in genetic testing have obviated difficulties in proving paternity and rendered such proof reliable and accurate in most cases, procedural difficulties remain. In the absence of an open and notorious acknowledgment of paternity by the decedent, persons unknown to the decedent and/or his or her personal representative potentially could have rights in an estate. Since the finality of a decree is dependent upon the service of all distributees, granting such rights would render the finality of decrees suspect (*see Lalli v Lalli, supra* at 271; *Matter of Flemm,* 85 Misc 2d 855 [1975]). Such testing often could require exhumation of the decedent's body (*see Matter of Sekanic, supra; Matter of Janis, supra*). Even if, as here, exhumation is not required, DNA testing could result in needless delay, expense, and embarrassment.

Since the evidence in the record fails to demonstrate open and notorious acknowledgment of paternity, the order appealed from should be reversed (*see Matter of Seekins, supra; Estate of Gentile, supra; Estate of Walsh,* NYLJ, Dec. 17, 1996, at 29, col 3).

However, since the petitioner was prepared to submit the testimony of additional witnesses on this issue, the matter should be remitted to the Surrogate's Court, Kings County, for a hearing on whether the decedent openly and notoriously acknowledged the petitioner as his son. If the petitioner establishes open and notorious acknowledgment by clear and convincing evidence, his motion for DNA testing should be granted.

Contrary to the appellant's contention, if in fact the petitioner was adopted by his mother's husband, that adoption would not terminate his rights to inherit from his birth father. Adoption by the spouse of a birth parent does not terminate "the rights of an adoptive child to inheritance and succession" by intestacy "from and through either birth parent" (Domestic Relations Law § 117 [1] [e]; *see Matter of Seaman,* 78 NY2d 451 [1991]; *Matter of Morrow,* 187 Misc 2d 742 [2001]).

Finally, we note that if, after a hearing, open and notorious acknowledgment is established and DNA testing is directed, the

order must contain safeguards to insure the genetic material provided by the petitioner for comparison is in fact from the petitioner. The order appealed from failed to include such safeguards.

Accordingly, the order is reversed, on the law, and the matter is remitted to the Surrogate's Court, Kings County, for a hearing on the issue of whether the decedent openly and notoriously acknowledged the petitioner as his son and for a new determination of the petitioner's motion for DNA testing in accordance herewith.

COZIER, J.P., RITTER and LIFSON, JJ., concur.

Ordered that the order is reversed, on the law, without costs or disbursements, and the matter is remitted to the Surrogate's Court, Kings County, for a hearing on the issue of whether the decedent openly and notoriously acknowledged the petitioner as his son and for a new determination of the petitioner's motion for DNA testing in accordance herewith.