OPINION OF THE COURT
John B. Riordan, J.
*332 In these proceedings for letters of administration by petitioner, Jan Gaynor, and cross petitioner, Mark Thompson, the cross petitioner moves the court for an order directing certain family members to submit to DNA testing at an established laboratory. The movant also seeks a direction that Jan Gaynor reimburse the estate for use and occupancy of decedent’s former home, a direction that Jan Gaynor be restrained from removing, selling or transferring any assets of decedent until further order of the court, and that movant be awarded attorneys fees for this application.
Lillian Gaynor died intestate on May 8, 2005. Jan Gaynor submitted a petition for letters of administration on June 27, 2005. In that petition he alleged that he was the decedent’s only child. In an affidavit of heirship by George Thompson, a friend of the deceased who knew her for 55 years, Mr. Thompson swears that Lillian Gaynor was married to her first and only husband, Robert W. Gaynor, who died in 1980. One child was born of that marriage, Jan Gaynor, and she never remarried and no other children were born to or adopted by Lillian Gay-nor.
On July 1, 2005, the cross petition of Mark Thompson for letters of administration was filed in this court. In that petition, Mark Thompson alleges that Lillian Gaynor was survived by two sons, himself and Jan Gaynor. In an affidavit filed by Mark Thompson and accompanied by a certified copy of his birth certificate dated February 20, 1958, he alleges that his mother was Lillian Gaynor and his father was George Thompson, the friend of the decedent and affiant on the affidavit of heirship filed by Jan Gaynor. Mark Thompson avers that his mother and father were never married and both were married to other people at the time of his birth. He alleges that his birth was meant to be kept secret and thus the listing of “Lillian Ann Barr” on his birth certificate as the full maiden name of the mother (Lillian Gaynor’s true maiden name was “Bayer”), and the listing of the father’s name as “George Thomson” without the “p” was part of their subterfuge. Mark Thompson asserts that Jan Gay-nor and he are half brothers, both the children of the decedent.
On November 10, 2005, temporary limited letters of administration were issued to Jan Gaynor upon posting a bond of $470,000 permitting him to withdraw $20,000 from decedent’s account to reimburse himself for $12,872.92 paid for decedent’s funeral and to pay arrears and future payments on decedent’s automobile lease.
*333 DNA Testing
In these circumstances, Mark Thompson’s request that the court direct Jan Gaynor and/or George Thompson to provide a DNA sample is a request for discovery (CPLR 3101). CPLR 3101 (a) provides for discovery of all matter, material and necessary in the prosecution or defense of an action. CPLR article 31 applies to all litigated matters in the Surrogate’s Court (SCPA 102).
With respect to George Thompson, the request is for discovery from a nonparty (CPLR 3101 [a] [3], [4]; CPLR 3120 [1]). Disclosure from a nonparty witness must be obtained by the issuance of a subpoena duces tecum issued to that person (CPLR 3120 [1] [i]; cf. CPLR 3106 [b]). Furthermore, such disclosure requires a showing of special circumstances that the information sought cannot be obtained from other sources (Tannenbaum v Tenenbaum, 8 AD3d 360 [2004]). Because George Thompson is not properly before this court and no subpoena issued to compel him to provide a DNA sample, the request that the court order the production of a DNA sample from George Thompson is denied at this time.
With respect to Jan Gaynor, the motion for a DNA sample from him is granted.
DNA testing to determine maternity where the only sample available is the DNA of the two siblings or half siblings has been scientifically established as valid (John Butler, Forensic DNA Typing [2d ed 2005]; Brenner, The Symbolic Kinship Program, 145 Genetics, at 535-542 [1997]). Many laboratories have available Web sites where siblingship and half siblingship testing may be obtained (see e.g. <www.DNA Diagnostics Center.com> and <www.Gentrace.com>). The success rate of the conclusiveness of a siblingship test differs between different families and is dependent on the types of genetic markers that are found on the individuals tested. There is generally no method to tell in advance how conclusive the results will be, but in many cases the siblingship test can produce a conclusive determination.
Several courts in New York have considered DNA test results in determining maternity (Doe v New York City Bd. of Health, 5 Misc 3d 424 [2004]) usually in surrogate parenting cases (Matter of Andres A. v Judith N., 156 Misc 2d 65 [1992]; see also Matter of Life and Death: Inheritance Consequences of Reproductive Technologies, 25 Hofstra L Rev 1091, 1102 [1997]). At least one state has a statute which permits establishing maternity by *334 DNA testing (Ohio Rev Code § 3111.02). Several other states’ courts have authorized DNA testing to determine maternity (Culliton v Beth Israel Deaconess Med. Ctr., 435 Mass 285, 756 NE2d 1133 [2001]; In re C.K.G., 173 SW3d 714 [Tenn 2005]; Belsito v Clark, 67 Ohio Misc 2d 54, 644 NE2d 760 [1994]).
Several courts have permitted the compelled production of a DNA sample as part of discovery in a civil action (McGrath v Nassau Health Care Corp., 209 FRD 55 [US Dist Ct, ED NY 2002]; D’Angelo v Potter, 224 FRD 300 [US Dist Ct, D Mass 2004]; Hargrave v Brown, 783 So 2d 497, 499-501 [La Ct App 2001]). The decision of United States Magistrate Judge Wall in McGrath v Nassau Health Care Corp. analyzes the relevant cases to determine the requisite showing that a DNA sample is warranted, through the introduction of sworn statements and other evidence. Adopting the standard set forth by the Louisiana court in Hargrave v Brown, Magistrate Judge Wall held that the party seeking to compel DNA testing must establish a prima facie showing of the reasonable possibility of a match before obtaining the requested order. Magistrate Judge Wall distinguished cases where the production of DNA was denied because of the speculative nature of the application (Harris v Athol-Royalston, Regional School Dist. Comm., 206 FRD 30, 34 [US Dist Ct, D Mass 2002]; LaVallee v State of N.Y. Off. of Children & Family Servs., 182 Misc 2d 58, 60 [1999]).
In the present case, the affidavit of Mark Thompson and exhibits annexed thereto provide a sufficient prima facie showing that there is a reasonable possibility of a DNA match establishing half siblingship. Jan Gaynor’s privacy rights will not be unduly affected by a blood test or a cheek swab where the obtaining of such a sample can in the present case be dis-positive of the cross petitions (McGrath v Nassau Health Care Corp., 209 FRD 55, 61 [US Dist Ct, ED NY, 2002]).
Other Relief
The application that Jan Gaynor reimburse the estate for use and occupancy of decedent’s former home is denied at this time until a hearing determines the kinship issues raised herein. Similarly, the court declines to direct Jan Gaynor as the temporary administrator from removing, selling or transferring any assets of the decedent at this time other than the limitations it has already placed on his letters. The application for attorneys fees for movant for this application is denied.