[891 NYS2d 268]

In the Matter of the Estate of JERMAINE MICHAEL WILLIAMS, Deceased.

Surrogate's Court, Bronx County, December 3, 2009

## APPEARANCES OF COUNSEL

*Oshrie Zak*, for Sandy C. Martinez, movant. *Marcel Florestal*, for Jamal Williams, respondent.

## OPINION OF THE COURT

LEE L. HOLZMAN, J.

The issue presented in this motion is whether the decedent's alleged posthumous nonmarital son is entitled to posthumous DNA testing, utilizing tissue already in the possession of the New York City Medical Examiner, in order to establish his right to inherit from the decedent under EPTL 4-1.2 (a) (2). This appears to be a case of first impression in that the request for testing is made on behalf of a posthumous child.

The decedent died intestate on May 28, 2008, allegedly as a result of a homicide. The movant is the mother and guardian of the property of the alleged posthumous child who was born on September 26, 2008. The respondent, the decedent's brother, is the guardian of the property of two other nonmarital infant sons who have different mothers and who were born prior to the decedent's death, and he recognizes them as distributees entitled to inherit from the decedent. The respondent opposes the motion.

The movant and the respondent previously stipulated that letters of temporary administration would issue to the respondent, that this motion is to be determined by the court without a hearing, and, if granted, the movant is to pay for the cost of any testing (*Estate of Williams*, NYLJ, July 10, 2009, at 34, col 3). The New York City Office of the Chief Medical Examiner acknowledges that it possesses tissue samples of the decedent that can be used for DNA testing, and informed the court that it takes no position with respect to the pending motion and will comply with any duly issued order of the court.

In support of her motion, the movant submits an affidavit alleging that she and the decedent were involved in an intimate relationship that began in 2003 and continued until the decedent's death. Although the decedent, in accord with the position he took when she was previously pregnant, initially suggested that she terminate her last pregnancy, he changed his mind. Thereafter, the decedent acknowledged that he was the

father of her son, he supported her during her pregnancy, he accompanied her to two prenatal appointments, and at least one of his friends learned of her pregnancy from the decedent. Attached to her moving papers are numerous pictures of herself and the decedent at social gatherings involving her coworkers and family.

The movant contends that because her son was born four months after the decedent's death, she is entitled to posthumous DNA testing to establish her son's right to inherit under EPTL 4-1.2 (a) (2) (C) and that, at this juncture of the proceeding, she is not required to produce any proof of the second prong of that provision; namely, that the decedent openly and notoriously acknowledged the child as his own (see Matter of Morningstar, 17 AD3d 1060 [2005]). In the alternative, she argues that if she is required to present "some evidence" of an open and notorious acknowledgment by the decedent in order to obtain posthumous DNA testing, her affidavit fulfills this requirement (see Matter of Poldrugovaz, 50 AD3d 117 [2008]). Furthermore, the movant opines that if DNA testing shows that the decedent is the father of her child, the posthumous child cannot be required, at any stage of the proceeding, to establish that the decedent openly and notoriously acknowledged him in order to inherit from the decedent under EPTL 4-1.2 (a) (2), as such a burden is legally and factually impossible to meet given the timing of the child's birth.

The respondent essentially contends that, by definition, a posthumous nonmarital child would never be able to meet the prong of EPTL 4-1.2 (a) (2) (C) requiring an open and notorious acknowledgment by the decedent, who did not live long enough to acknowledge a child not yet born. The respondent also argues that the movant's self-serving affidavit contains statements that would be inadmissible at a hearing and, in any event, is insufficient to establish an open and notorious acknowledgment by the decedent.

At first blush, and in the absence of any precedent, it would appear that the movant might rely upon clause (D) of EPTL 4-1.2 (a) (2) instead of clause (C) in support of her application for posthumous DNA testing, as clause (D) provides that nonmarital children may inherit from their father where "a blood genetic marker test had been administered to the father which together with other evidence establishes paternity by clear and convincing evidence." On the other hand, the two-pronged test to establish inheritance rights under clause (C) requires a party

to prove paternity by clear and convincing evidence and show that the father openly and notoriously acknowledged the child as his own.

Apparently, the reason that the movant did not seek posthumous DNA testing under clause (D) is that the first two times the issue was raised before appellate courts, the requests for testing under clause (D) were denied on the ground that the use of the past tense in the statutory language, stating that the test *"had* been administered to the father" (emphasis added), reflects a legislative intent that the test be administered prior to the father's death (*Matter of Sekanic*, 229 AD2d 76 [1997]; *Matter of Janis*, 210 AD2d 101 [1994]). It is noted that in both of those cases the testing could not have been performed without the exhumation of the decedent and, in dicta, each court stated that even if posthumous testing was permissible under clause (D), the law governing the exhumation of bodies would dictate that the application be denied.

In contrast, where posthumous DNA testing could be performed without the disinterment of the decedent, applications for testing under clause (C) were successful. In *Matter of Morningstar* (17 AD3d at 1060) the Appellate Division, Fourth Department, held that alleged nonmarital children were entitled to posthumous DNA testing to establish their inheritance rights under EPTL 4-1.2 (a) (2) (C). Furthermore, that court held that even though the DNA testing would establish only the paternity prong of clause (C), and that to prevail at the trial the nonmarital children would have to establish both paternity and show an open and notorious acknowledgment, "there is no basis in the language of the statute . . . for requiring [them] to demonstrate first that decedent openly and notoriously acknowledged them as his children before DNA testing may proceed" at the pretrial stage of the proceeding (*id.* at 1060-1061). Thus, in essence, the position of the Fourth Department is that, as is the case with other disclosure demands, pretrial DNA testing should be allowed where the testing is material and necessary in the prosecution or defense of an action (*see* CPLR 3101 [a]).

In *Matter of Davis* (27 AD3d 124 [2006]), the Appellate Division, Second Department, held that although posthumous DNA testing could be used to establish paternity under clause (C), the testing would not be allowed unless the nonmarital child first presented clear and convincing proof of an open and notorious acknowledgment. Two years later, in *Matter of Poldrugovaz* (50 AD3d at 118), the Second Department modified the *Davis*

rule and held "that a court may grant a pretrial motion for posthumous genetic marker testing when the applicant provides *some* evidence" to fulfill the open and notorious prong of clause (C) and the testing "is reasonable and practical under the total-ity of the circumstances" (emphasis added).

Although *Matter of Poldrugovaz* (50 AD3d at 117) ruled upon the use of pretrial posthumous DNA testing within the context of clause (C), it appears clear that the court would have preferred that applications for such testing be made and considered under clause (D), which explicitly deals with genetic marker testing. This is evident from the following portions of the opinion: (1) the requirement that the testing is to be done prior to death "was imposed by judicial interpretation" as clause (D) "did not expressly" so provide; (2) the precedent requiring that the testing be done prior to death involved cases where the "testing was not warranted where to do so would unreasonably require disinterment of the decedent's body"; (3) in most cases it is not likely "that a genetic marker test will have been conducted prior to the alleged father's death"; (4) "the restric-tive reading" of clause (D) "has been the subject of criticism" and proposals have been made to amend it "to allow for posthu-mous DNA testing"; (5) the restrictive interpretation of clause (D) is inconsistent with the "consistent trend" in the common law affording nonmarital children inheritance rights "in pari materia with marital children," the "increasing legislative sensitivity to the inheritance rights of nonmarital children" and the "evolution of social mores" reflected by the statistics that nonmarital children are presently a significant percentage of all newly born children; and (6) that "several decisions in the Sur-rogate's Courts recognized" that the present "literal reading" of clause (D) "was that it effectively precluded the use of highly probative genetic marker testing as a means of proving paternity, thereby impairing the ability of nonmarital children to assert rights of inheritance" (*Matter of Poldrugovaz*, 50 AD3d at 121-125, citing *Matter of Thayer*, 1 Misc 3d 791, 792 [2003]; *Matter of Santos*, 196 Misc 2d 972, 975 [2003]; *Matter of Bon-anno*, 192 Misc 2d 86 [2002]; *Matter of Johnson*, NYLJ, Oct. 15, 1997, at 37, col 2). Thus, it is clear that the Second Department would favor a legislative amendment to clause (D) to allow post-humous testing in appropriate cases. It could also be argued that *Matter of Poldrugovaz* (50 AD3d at 117) lays the founda-tion for subsequent cases to interpret clause (D) more expan-sively to include posthumous testing where the testing does not

entail the disinterment of the decedent and is reasonable under all of the circumstances.

This court is of the opinion that the *Morningstar* rule (17 AD3d at 1060) enunciated by the Appellate Division, Fourth Department, is the better rule for pretrial discovery motions and that the testing should be ordered without requiring the presentation of any proof on the issue of open and notorious acknowledgment. There are practical reasons for this conclusion. In the event that the testing shows that the decedent is not the child's father, that is the end of the proceeding (*see Matter of Bonanno*, 192 Misc 2d at 88 ["(t)here is no basis in law or logic to exclude the results of posthumously conducted DNA tests . . . from the category of 'clear and convincing' evidence under EPTL 4-1.2 (a) (2) (C)"]). Furthermore, it has been the experience of this court that, despite their initial skepticism towards the claim of the nonmarital child, other family members often accept and recognize the child as part of their family after the testing establishes paternity (*see Matter of Thayer*, 1 Misc 3d at 791 [the decedent's mother, who was at first skeptical that the decedent was the father of a posthumous child, without a court order saved samples so that posthumous DNA testing could be conducted, and then supported the child's inheritance rights after the testing established paternity]).

Here, the court finds that the pretrial motion for posthumous DNA testing under EPTL 4-1.2 (a) (2) (C) should be granted. Specifically, the circumstances relied upon by the court are that the tissue needed for the testing has been in the continuous possession of the New York City Office of the Chief Medical Examiner since the decedent's death, the movant is to pay for the cost of the testing and the alleged nonmarital child was posthumously born. Thus, aside from the fact that other family members might be surprised and reject the status of an alleged child whose existence was unknown to them prior to the decedent's death, the DNA testing should not cause any undue hardship to other members of the decedent's family.

In the alternative, the court grants the pretrial testing requested by movant even if the applicable standard is to require some evidence of an open and notorious acknowledgment (*Matter of Poldrugovaz*, 50 AD3d at 117). Here, as the child was born posthumously, an open and notorious acknowledgment by the decedent, if required, would have to relate to the decedent's acts and statements during the period of gestation and not to the decedent's acts and statements after the birth of the child

(*see Matter of Thayer*, 1 Misc 3d at 791 [other members of decedent's family testified that the decedent acknowledged to them that he was the father of the posthumous child during the pregnancy of the child's mother]). Here, the movant's affidavit suffices to fulfill the "some" evidence test of an open and notorious acknowledgment even though it might be insufficient, standing alone, to prevail on this issue at trial.

In conclusion, the court notes that EPTL 4-1.2 is essentially a default statute pursuant to which the law presumes how the majority of decedents would want their property distributed where they have failed to execute valid wills expressly disposing of their property. It does not necessarily follow that the identical criteria apply to determine the inheritance rights of posthumous nonmarital children and nonmarital children born during the decedent's lifetime. Specifically, although there is some logic in presuming that a father who failed to acknowledge a nonmarital child during his lifetime would not want that child to share in his estate, it is not clear that this presumption can logically be applied in the case of a posthumous nonmarital child. Here, should the testing establish that the decedent is not the child's father, this would be the end of the case (*Matter of Bonanno*, 192 Misc 2d at 86). Thus, the ruling herein permitting pretrial DNA testing renders it unnecessary for the court or the parties to spend their limited resources at this stage of the proceeding either on the issue of the proof, if any, required to establish an open and notorious acknowledgment of the alleged posthumous nonmarital child, or whether, under the circumstances of this case, the alleged posthumous nonmarital child can prevail by presenting other evidence, such as the results of genetic testing and other proof of paternity pursuant to EPTL 4-1.2 (a) (2) (D).

Accordingly, the motion is granted.