## Matter of Lewis

### 2016 NY Slip Op 33228(U)

### April 8, 2016

### Surrogate's Court, Bronx County

### Docket Number: File No. 2013-293/A, B

### Judge: Nelida Malave-Gonzalez

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SURROGATE'S COURT, BRONX COUNTY

April 8, 2016

ESTATE OF CLARENCE LEWIS, Deceased
File No.: 2013-293/A, B

In two separate proceedings by Cynthia Gatewood (Cynthia), an alleged daughter of the decedent, seeking to revoke the letters of administration that issued to the decedent's alleged son Barrett Lewis (Barrett) and the issuance of letters of administration d.b.n. to herself, there are two motions before the court seeking, inter alia, to compel DNA testing and one motion opposing that relief and requesting other relief.

The first motion, by Cynthia, seeks to compel a DNA test of three alleged children of the decedent; namely, herself, Barrett and another alleged son, Craig Lewis (Craig). The second motion is by the administrator, Barrett, for the same relief and to amend a temporary restraining order (TRO) issued by this court to correct the address of the realty set forth therein, and amend his letters of administration to authorize the collection of over $17,000 in royalties owed to the estate on the condition that they are held in his attorney's escrow account. Cynthia does not oppose the additional relief sought by Barrett regarding the amendment of his letters and

the TRO. The last motion is by the alleged son Craig, for an order denying any DNA tests, revoking the letters of administration that issued to Barrett, appointing the Public Administrator as administrator of the estate, and disqualifying counsel for Cynthia based on an alleged conflict of interest. Cynthia and Barrett oppose Craig's motion.

The decedent, a singer and music producer, died on June 16, 2011 at the age of 85. In a petition filed February 11, 2013, the alleged son Barrett listed himself as a non-marital child and sole distributee, and indicated that the estate consisted of $10,000 in personal property and a two-family residence located in Manhattan valued at $150,000, with rents of $7,000. In support, he annexed his birth certificate indicating he was born on October 26, 1963 and listing the decedent as his father. An affidavit of heirship by a friend of the decedent indicated, inter alia, that Barrett was the decedent's only non-marital child and the decedent never married. By decree dated March 18, 2013, Barrett was granted letters of administration limited by SCPA 805 (3).

As it appears that Barrett's petition and supporting papers may be incorrect, a brief synopsis of the dates of the alleged births of the three non-marital children and the decedent's marriages is required. Based on evidence submitted in support of the three motions, it appears that: (1) the decedent was married to his first wife, Elnora, when Cynthia was born to "Nell" on August 18, 1950 in North Carolina; (2) also during the decedent's marriage to Elnora, Craig was born to "Betty" on January 25, 1959; (3) during

the decedent's first marriage to Elnora, Barrett was born to "Dorothy" on October 26, 1963; (4) the decedent's first wife Elnora died in November, 1983; (5) the decedent married Craig's mother Betty on December 11, 1984; and, (6) the decedent's wife Betty predeceased the decedent on May 3, 1993. The decedent's name appears on the birth certificates of Craig and Barrett only.

In the underlying revocation proceeding commenced in December, 2014 Cynthia asserts, inter alia, that Barrett knew of the two other children at the time he commenced the administration proceeding. In support of her applications, she annexed a waiver and consent by Craig consenting to her appointment as administrator d.b.n., and a November 20, 2014 affidavit by Craig who repeatedly states, inter alia, that Cynthia, he and Barrett were all the decedent's children, and Barrett always knew that Craig and Cynthia were also the decedent's children. Although Cynthia and Craig also contended that Barrett had a criminal record, they did not indicate whether or not that criminal record contained a felony conviction. In support of her motion, Cynthia annexed her birth certificate which is blank with respect to a father; nonetheless, Cynthia also annexed New York school records listing the decedent's surname as her maiden name, identifying her parents as the decedent and his first wife, Elnora, and listing a residence in Manhattan which was then their residence. Cynthia's petition values the estate realty at $1 million.

Following the commencement of Cynthia's proceedings,

[* 3]

4

several conferences were held during which the parties discussed the option of DNA testing. During these conferences, Cynthia and Craig continued to be allied. In Cynthia's petitions and in one conference stipulation her counsel indicated that she represented Cynthia only; however, on one conference stipulation she indicated that she also represented Craig. The parties appeared to agree to submit to DNA testing but this was never put into a final written stipulation and, subsequently, Craig retained new counsel and adopted a different posture, refusing to take a DNA test.

In her motion, Cynthia seeks an order compelling all parties to submit to a "sibling full DNA test" at an established laboratory. In support, she annexes, inter alia, Craig's affidavit dated November 20, 2014, as well as her birth certificate and educational documents previously submitted. In an additional supporting affidavit she states, inter alia, that she was conceived while the decedent and his first wife, Elnora, who was the aunt of Cynthia's mother Nell, visited her maternal family in North Carolina in 1949. After her birth in 1950, up to the time she was three years old, the decedent visited her in North Carolina, she visited him in New York and she has photographs of the decedent with her during this time. From ages four to 16, she lived in New York with the decedent and his wife Elnora who she called "Momma," she carried the decedent's last name as her maiden name, and they raised her as their child and educated her. When she was 14, the decedent introduced her to Craig and told her that he was her brother. Once older, she traveled with the decedent and resided with him again while he co-

[* 4]

5

produced various music labels. She indicates the decedent's first wife Elnora died in November, 1983. A marriage record annexed by Craig indicates that the decedent married Craig's mother Betty on December 11, 1984. Craig's mother Betty predeceased the decedent on May 3, 1993.

The administrator, Barrett, moves to compel the same DNA tests, contending that all parties had agreed to do this until Craig changed counsel. He states that the estate is entitled to receive music royalties of $17,000, and his letters of administration need to be amended to enable him to collect that amount which will be held in his attorney's escrow account pending further order of the court. He also requests that the TRO be amended to reflect the correct address of the realty.

In his motion, Craig annexes his birth certificate dated January 25, 1959 which lists the decedent and his mother, Betty, as his parents, as well their marriage certificate dated December 11, 1984, almost 25 years after Craig's birth. Relying on Family Court Act § 417, Craig objects to DNA testing asserting that because his parents married subsequent to his birth he is deemed the legitimate child of the decedent and should not be required to submit to "the indignity of a DNA test." Craig also asserts that his burden of proof in establishing paternity is not as great as that of Cynthia and Barrett, noting that although the decedent's name is on his and Barrett's birth certificates, the decedent never married Barrett's mother, the decedent's name is not on Cynthia's birth certificate, and there is no order of filiation for her or Barrett. According to Craig, Barrett should be removed as

administrator because he knew that Craig was the decedent's child but failed to name him as such in the administration proceeding, and upon removal, the court should appoint the Public Administrator to take control of the realty and alleged substantial rental income allegedly flowing therefrom. Finally, Craig contends that counsel to Cynthia previously represented him but did not advise him that there was a conflict between his interests and those of Cynthia who, unlike him, did not have proof of the decedent's paternity, and his former counsel never advised him that he did not have to submit to a DNA test.

In opposition to Craig's motion Cynthia contends, inter alia, there is no conflict of interest warranting the removal of her attorney as her attorney did not represent Craig who visited the attorney's offices only to execute his affidavit and waiver and consent in support of Cynthia, and her interests and those of Craig are not materially adverse. In his opposing affidavits Barrett asserts, inter alia, that he never knew Cynthia and Craig were the decedent's children, he believed that Cynthia was the niece of the decedent's first wife Elnora, and he has no information to believe Craig is the decedent's son. Barrett also disputes that there is rental income other than what he indicated in his initial petition for letters of administration.

Pursuant to EPTL 4-1.2 (a) (2) (C), as amended effective April 28, 2010 prior to the decedent's death, paternity may be established "by clear and convincing evidence, **which may include, but is not limited to:**

(i) evidence derived from a genetic marker test, **or** (ii) evidence that the father openly and notoriously acknowledged the child as his own,. . . ." (emphasis added).

Courts have compelled the production of a DNA sample as part of discovery in civil actions (see Matter of Konstantin, NYLJ, Jan. 27, 2012, at 39 [Sur Ct, Westchester County 2012]; see also Matter of Gaynor, 13 Misc 3d 331, 333 [Sur Ct, Nassau County 2006], citing McGrath v Nassau Health Care Corp., 209 FRD 55 [US Dist Ct, ED NY 2002]; D'Angelo v Potter, 224 FRD 300 [US Dist Ct, D Mass 2004]; Hargrave v Brown, 783 So 2d 497, 499-501 [La App 2001], writ denied 793 So 2d 1229 [La 2001]). Generally, and under former EPTL 4-1.2 (a) (2) (C), courts have required the party seeking to compel DNA testing to establish, prima facie, some evidence of open and notorious acknowledgment or at least a reasonable possibility of a match before obtaining the requested order (see Matter of Gaynor, 13 Misc 3d at 333; see also Matter of Poldrugovaz, 50 AD3d 117 [2d Dept 2008] [stating that former EPTL 4-1.2 (a) (2) (C) required "some evidence" that decedent openly and notoriously acknowledged the non-marital child as his own before ordering genetic testing on decedent's DNA exemplars]).

In Matter of Williams (26 Misc 3d 680 [Sur Ct, Bronx County 2009]), this court addressed a pretrial motion for DNA testing using the decedent's tissue sample being held by the New York City Medical Examiner. In Matter of Williams (id.), this court elected to follow the rule of the Appellate Division, Fourth Department, noting that "the better rule for

8

pretrial discovery motions [is] that the testing should be ordered without requiring the presentation of any proof on the issue of open and notorious acknowledgment" (see Matter of Williams, 26 Misc 3d at 680 [noting, inter alia, that "[i]n the event that the testing shows that the decedent is not the child's father, that is the end of the proceeding"], citing, Matter of Morningstar, 17 AD3d 1060 [4th Dept 2005]).

Here, Craig's affidavit submitted in support of Cynthia's petitions asserts that he, Cynthia and Barrett are the decedent's children. Cynthia corroborates Craig, stating that the decedent introduced Craig to her as her brother. Cynthia also produced school records constituting some evidence of open and notorious acknowledgment of her by the decedent. Finally, the birth certificates of both Craig and Barrett bear the decedent's name, although there is no evidence that the decedent himself signed forms directing the placement of his name on those birth certificates at the time that Craig and Barrett were born. Like Cynthia and Barrett, Craig is a non-marital child born at a time when decedent was not married to Craig's mother and, instead, was married to Elnora.

In sum, Craig was almost 25 years old and cannot be considered a "child" within the contemplation of Family Court Act § 417 or Domestic Relations Law § 24 when his mother and the decedent married. Furthermore, Craig was not conceived or born "during a marriage," in this case of his mother and the decedent, so as to be entitled to the strong presumption that he is the biological result of that same marriage (cf.

Domestic Relations Law § 24; Matter of Ariel G. v Greysy C., 133 AD3d 749 [2d Dept 2015]; Matter of Mary P. v Joseph T. P., 132 AD3d 404 [1st Dept 2015]). Significantly, Domestic Relations Law § 24 was not intended to establish paternity in contested proceedings such as those before the court (see Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 24, at 231, citing Matter of Pizarro, 155 Misc 2d 741 [Sur Ct Bronx County 1992]). Any possible presumption of legitimacy created by Family Court Act § 417 has been rebutted by Barrett, as well as the timing of Craig's birth during the decedent's first marriage to Elnora (see also Prof Merrill Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Court Act § 417, at 285 [stating that the presumption created by Family Court Act § 417 has been significantly compromised due to the widespread availability of DNA testing]).

As noted by the Surrogate's Court, Westchester County, many laboratories have available web sites where siblingship and half siblingship testing may be obtained, and generally, there is no method to tell in advance how conclusive the results will be as conclusiveness is dependent on the types of genetic markers that are found in the individuals tested; nonetheless, in many cases, the siblingship test can produce a conclusive determination (see Matter of Gaynor, 13 Misc 3d at 333). Although genetic material directly linking the three alleged non-marital children to the decedent is not readily available, so far as is presently known, the test at issue may be

[* 9]

determinative, of whether Cynthia, Craig and Barrett are at all biologically related (see Matter of Gaynor, 13 Misc 3d at 333). As all three alleged paternal siblings have submitted evidence that they all have different mothers but the same father, there is no doubt that such testing can be conducted to determine whether, in fact, they are paternal half siblings, notwithstanding Craig's objection to being the subject of the test. Therefore, pretrial DNA testing should be allowed as the testing is material, relevant and necessary to the issues presented in these proceedings (see Matter of Williams, 26 Misc 3d at 680, citing CPLR 3101 [a]; Matter of Morningstar. 17 AD3d at 1060). Even assuming the applicable standard is to require some evidence of an open and notorious acknowledgment (see Matter of Poldrugovaz, 50 AD3d at 117), there is sufficient evidence in the record to warrant the testing (see Matter of Williams, 26 Misc 3d at 680).

As there is a reasonable possibility of a DNA match establishing or ruling out common paternal half siblingship among the three alleged children, Craig's privacy rights will not be unduly affected by a blood test or a cheek swab where obtaining his sample may be dispositive of the issues underlying the proceedings at issue (see id.). Furthermore, EPTL 4-1.2 (a) (2) (C), in requiring clear and convincing evidence of paternity, sets forth the forms of proof permitted only by way of example and, even then, in the disjunctive. The paternal half siblingship test, standing alone, does not establish a link to the decedent directly so it is cannot be conclusive on the issue of the decedent's paternity. Therefore, EPTL 4-1.2 (a) (2) (C) still

requires each alleged non-marital child to proffer, at a hearing, any evidence in addition to the result of the DNA siblingship or half siblingship test that they deem necessary and appropriate to meet the clear and convincing standard with regard to their respective claims that the decedent was their father.

Accordingly, the motions to compel DNA testing are granted. Prior to any such testing, by May 9, 2016, the parties shall agree on a reputable testing laboratory to conduct the appropriate test for paternal half siblingship and inform the court in writing of that agreement. Should the parties be unable to agree on a reputable testing laboratory, then by the same date, they shall each submit to the court in writing the name of their preferred laboratory and the reasons for that preference, and the court shall select a single testing laboratory for all of them.

With respect to the remaining branches of Craig's motion seeking to disqualify Cynthia's attorney, revoke Barrett's letters of administration and appoint the Public Administrator, Craig has never commenced any proceeding in this court; instead, he simply filed a waiver, consent and an affidavit in support of Cynthia's petitions seeking revocation of Barrett's letters and the appointment of herself as administrator d.b.n. As Craig has no pending proceeding before this court he may not, by motion, independently seek the removal of Barrett and the appointment of the Public Administrator.

Finally, Cynthia continues to contend that Craig is the

decedent's child, and Craig has never sought to withdraw his waiver and consent and sworn affidavit in support of Cynthia's applications. Craig's latest posture is simply that he is not required to submit to a DNA test to determine whether there is paternal half siblingship among the three alleged children, and instead, as a matter of law, he is entitled to rely on a presumption of legitimacy allegedly flowing from his birth certificate and the marriage of his mother to the decedent 25 years after his birth. The court has rejected Craig's latest legal posture and notes that Craig and Cynthia remain allied in contending that they and Barrett are all the decedent's children. Only differences in the respective proof of Craig and Cynthia as a result of the circumstances of their birth exist, and any proof relating to the paternity of one does not conflict with the proof of paternity of the other. As a result and even assuming, arguendo, that Cynthia's attorney represented Craig previously, at this juncture there is no conflict of interest warranting the disqualification of Cynthia's counsel.

Accordingly, this decision constitutes the order of the court granting the motions by Cynthia and Barrett in their entirety and denying the motion by Craig in its entirety. The TRO contained in this court's order to show cause entered December 8, 2014 is hereby amended solely to change the address of the real property on 122nd Street from "East" to "West" and, as amended, that TRO continues until further order of the court.

By May 9, 2016, Barrett shall submit an application to amend his letters of administration to collect the $17,000 in royalties on notice to all

[* 12]

parties. In that amendment, Barrett shall also indicate changes in the amount of rent collected at the premises or any other potential royalties that may be due, if any, to enable the court to determine whether a bond may be required. Finally, although all parties have always contested Cynthia's proceedings, in order to clarify the present state of the court file, the court extends Barrett's time to file objections to May 9, 2016, sua sponte, and directs him to file and serve objections to Cynthia's petitions and pay the requisite fee therefor by that date.

The parties shall submit the requisite laboratory information by May 9, 2016. For control purposes only, the matter will appear on the court's calendar of June 21st, 2016.

Proceed accordingly.

HON. NELIDA MALAVE-GONZALEZ
SURROGATE